[No. 43604. En Banc. November 26, 1975.]

WASHINGTON STATE EMPLOYEES ASSOCIATION, *Appellant*, v. FRANK D. CLEARY, ET AL, *Defendants*, WESTERN WASHINGTON STATE COLLEGE, *Respondent*.

*Herbert H. Fuller*, for appellant.

*Slade Gorton, Attorney General*, and *Stephen G. Jamieson, Assistant*, for respondent.

WRIGHT, J.—This is an appeal from the order of summary judgment by the Thurston County Superior Court affirming the action of the Higher Education Personnel Board. The parties hereto stipulated in open court in the Superior Court that no material question of fact was present and that summary judgment was appropriate. Each party moved for summary judgment and the court denied appellant's motion and granted respondents' motion. This appeal was taken to the Court of Appeals, Division Two, which

certified the matter to this court because of its importance.

This action involves the compensation of certain employees of Western Washington State College, hereinafter referred to as the "college." The employees specifically affected were known as group III employees. Group III employees were a comparatively small number of persons who did skilled work and received higher compensation than the majority of classified employees.

In addition to regular step increases and other normal increments received by classified employees, the group III employees were eligible for certain special increases known as "merit pay increases." These increases were based upon recommendations and were given for meritorious work, but only after the employee had first been recommended for such increase and then the work of the employee had been evaluated, and was subject to the availability of funds. Not all group III employees received merit pay increases in any year.

RCW 28B.16 deals with the Higher Educational Personnel Board, its powers and duties. The matter of the board and a discussion of its promulgation of rules and policies will be considered hereinafter.

On June 10, 1971, the Higher Education Personnel Board held a meeting and adopted a pay plan for classified personnel at the college during the fiscal year starting July 1, 1971. The pay plan applied to all classified personnel, including group III employees.

It may be proper to mention at this point that classified employees are nonteaching personnel. Teachers are referred to as "certified."

Following the June 10, 1971, meeting of the board, the college administration gave careful consideration to the matter and to the financial position of the college. On July 7, 1971, the business manager of the college, who is the chief financial officer of the institution, sent notice to all group III employees that there would be no merit pay increases during the fiscal year starting July 1, 1971. It should here be noted the employees had been working for

about 7 days in the new fiscal year when the notice was received. This fact is important because it forms the basis of one of appellant's contentions.

Appellant filed a petition with the Higher Education Personnel Board on June 8, 1972, nearly a year after the events which gave rise to this litigation. That petition was the initiation of the proceedings which led to this appeal.

The 1969 legislature, Laws of 1969, 1st Ex. Sess., ch. 282, budgeted $23,671,716 for the college for the 1969-1971 biennium. The 1971 legislature, Laws of 1971, 1st Ex. Sess., ch. 275, budgeted $23,586,047 for the college for the 1971-1973 biennium. Despite the increase which was generally known to have taken place in costs, prices and expenses during that period, the appropriation was $85,669 less than the previous biennium, and the 1971 appropriation required that $100,000 "be used only to develop and implement new and innovative educational programs." This actually resulted in the college having $185,669 less available for normal operations in the 1971-1973 biennium than in the previous biennium.

■ We are well aware of the rule that any portion of a bill enacted by the legislature which shall have been vetoed by the Governor, and which veto is not overridden, is to be considered exactly as if such portion of the bill had never been enacted. *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 25 P.2d 91 (1933); *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 104 P.2d 478 (1940). The Governor acts as a part of the legislature when exercising the veto power. *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944); *Gottstein v. Lister*, 88 Wash. 462, 153 P. 595 (1915).

Under the peculiar circumstances here, we deem it proper, however, to mention that chapter 275 of the Laws of 1971, 1st Ex. Sess., originally contained section 107 which read:

It is the intent of the Legislature that no salary increase be granted in the same job classification to any individual in the employ of the state whose salary is funded by the provisions of this act, including those individuals employed by the six units of higher education,

those employed by elected officials or those employed by the community colleges throughout the 1971-73 fiscal period.

That section was vetoed by the Governor. Although he could and did veto section 107, he, of course, could not restore the funds to the college. Lacking funds, the provisions of section 107 gave at least some indication of how two of the three component parts of the legislative authority desired to have the necessary economies effected.

The fundamental source of authority for the establishment of pay schedules for the institutions of higher education in the state comes from RCW 28B.16.100 which authorizes the Higher Education Personnel Board to adopt and promulgate rules and regulations. Among the subjects upon which rules may be made is the matter of salary and pay schedules. In that section it is provided that "such adoption, revision, and implementation shall be subject to approval as to availability of funds by the chief financial officer of each institution." The act itself has no mention of merit pay.

The source of the authority to give merit pay increases is found in the rules and policies adopted by the Higher Education Personnel Board. The pertinent part of the rules reads as follows (§ 5.8 Compensation Plan for Staff Personnel):

SALARY INCREASES. It is the intent of these rules to provide regular increases within the established series of steps based upon length of service for all employees whose standard of performance is such as to permit them to retain job status in the staff service.

After completion of the probationary period, salary increases of one step within the appropriate salary range for continued satisfactory service shall be made annually.

The College encourages employees to advance themselves in their work as rapidly as possible. Special merit of individual employees upon a proper showing by the appropriate academic or administrative officer *may* be recognized by special merit salary increases. These increases will be within and follow the established range and steps but may be more frequent than regular in-

creases or greater than one step at a time in recognition of more than satisfactory service.

(Italics ours.) The pertinent part of the policies is as follows:

Group III employees are entitled to annual within range increases of $15, $20, or $25 per month, depending upon their specific range assignment; in addition to the guaranteed increments, merit increases of from $5 to $50 per month *may* be granted. In no event can any salary exceed the maximum for the range to which the position is assigned.

Beginning with the fiscal year 1968-69, an amount of money shall be budgeted annually from funds appropriated for classified staff increases for merit increases for employees in Group III; the total amount budgeted for this purpose shall equal the amount necessary for the minimum increments. The Director of Personnel shall prescribe procedures for the recommendation, evaluation, and allocation of merit increases for the purposes of the Group III Pay Plan.

(Italics ours.)

The board, thus, only gave permission to grant merit pay increases. It should be noted there was never granted a right to such increases. There was no more than a method by which such increases could be granted to selected individuals after consideration.

While a fairly high percentage of the group III employees received merit pay increases in some years, there was no assurance to any certain employee that he or she would receive any such increase. Such an increase was granted to an individual only after being recommended by his or her supervisor and then going through an evaluation and finally the decision to grant the increase. Such merit pay increases had to be earned, they were not granted automatically, they were not a matter of right with any individual employee.

 Only the rules and policies of the Higher Education Personnel Board mention merit pay increases, there is no mention of such increase in the statute. Thus, when the board held a hearing on this matter the board was applying

and construing its own rules. Such construction by the identical agency which promulgated the rule initially is entitled to great weight. *Immigration & Naturalization Serv. v. Stanisic*, 395 U.S. 62, 23 L. Ed. 2d 101, 89 S. Ct. 1519 (1969); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 89 L. Ed. 1700, 65 S. Ct. 1215 (1945).

The Superior Court found that the actions of the board were not arbitrary or capricious nor clearly erroneous. The board accorded to both parties ample opportunity to be heard, and carefully considered the arguments of both parties. The action of the board was exercised honestly and upon due consideration. Action taken after giving both parties ample opportunity to be heard, exercised honestly upon due consideration and on a matter upon which there is room for two opinions, is not arbitrary and capricious. *Bishop v. Houghton*, 69 Wn.2d 786, 420 P.2d 368 (1966); *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972).

For the reasons hereinbefore stated the action was not only not clearly erroneous, but was clearly correct. Therefore, the Higher Education Personnel Board and the Superior Court are affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.