[No. 6411–5–III.   Division Three.   July 25, 1985.]

CINDY BARRINGTON, ET AL, *Respondents,* v. EASTERN
WASHINGTON UNIVERSITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General, Owen F. Clarke, Jr., Senior Assistant,* and *Thomas R. Chapman, Assistant,* for appellant.

*Edward Earl Younglove III* and *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff, P.S.,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* amici curiae.

GREEN, C.J.—Eastern Washington University (EWU) appeals from a Spokane County Superior Court order upholding the decision of the Higher Education Personnel Board (HEPB) to reinstate four employees. The issues presented concern interpretation of the applicable statutes and rules and whether the decision of HEPB was arbitrary or capricious.

During September 1981 the Governor ordered all state agencies to reduce their budgets by 10.1 percent over the remainder of the biennium. For EWU's computer services budget, this meant a reduction of approximately $120,000. Cindy Barrington, Nancy Simpson, Dawn McClenahan, and Mary Shears were employed by EWU as data entry operators in the university's computer center. Between June 30 and July 15, 1982, the first three were given layoff notices reciting lack of funds as the reason. Without data entry operators to supervise, Mary Shears' position was reallocated down from supervisor to operator.

Meanwhile, on May 28, 1982, EWU entered into a "lock box" agreement with Seattle–First National Bank (Sea–First). Under that agreement, students were to mail payments to a post office box held in the name of EWU. Sea–First agreed to collect the mail, process the payments depositing them into EWU's account, and prepare a magnetic tape of the transactions for EWU's student account records. For these services, EWU was not to be billed. Instead, EWU agreed to maintain a minimum interest–free balance of $108,000 in one of its accounts. The agreement was not to be implemented until November.

On July 16 EWU entered into a second data processing contract, this one with Data Processing Services, Inc. (DPS). This agreement was in the nature of a requirements contract, with DPS providing its services on an as–needed basis. EWU did not use the services of DPS until the latter part of September and the first billing was not received by EWU until October 13.

At a September 2, 1982, joint labor–management committee meeting, representatives from EWU and the Washington Federation of State Employees discussed the DPS and Sea–First contracts. EWU's representative assured the union that only one–tenth of one full time equivalent (FTE), a de minimis amount, would be affected by the DPS contract. EWU expected even less work to be affected by the Sea–First agreement. The union representatives requested copies of both contracts, which were given to them the following week. Still unable to gauge the amount of work, the union requested copies of billings. In November, when they received and examined the DPS billing, the union representatives filed appeals on behalf of the employees alleging a violation of RCW 28B.16.240.

RCW 28B.16.240 provides:

> Nothing contained in this chapter shall prohibit any institution of higher education, as defined in RCW 28B.10.016, or related board from purchasing services by contract with individuals or business entities if such services were regularly purchased by valid contract at such

institution prior to April 23, 1979: *Provided,* That *no such contract may be executed or renewed if it would have the effect of terminating classified employees* or classified employee positions existing at the time of the execution or renewal of the contract.

(Italics ours.)

At the hearing before the HEPB, EWU contended the appeals were not timely filed because the layoffs had occurred in June and July. It also contended, contrary to the notices provided the employees, that the layoffs resulted from a lack of work.

EWU's director of information services, Tom Pyle, testified to the number of keystrokes performed by employees as well as by the contractors. The lack of work and the de minimis effect of the contracts were to be determined by reference to the standard of 10,000 keystrokes per hour. Mr. Pyle admitted 10,000 keystrokes per hour is comparable to a secretary typing 120 words per minute, and the production level assumed by EWU's figures (10,000 keystrokes per hour times 8 hours per day times 22 days per month) was unreasonable. He admitted that EWU's assumptions failed to account for other duties required of the operators. Mr. Pyle regarded laying off three operators and contracting out the excess work as "a cost–effective approach to the situation."

HEPB unanimously found the appeals had been filed within 30 days from the date on which the employees' representative could reasonably have gained knowledge of the impact of the two contracts, and that the work performed under these contracts was the same as that performed by the employees prior to their layoffs. A majority of HEPB found the contracts involved significantly more than one–tenth of one FTE, were more than de minimis, and had the effect of eliminating the employees' positions. One member dissented.

The employees were ordered reinstated and this decision was affirmed on appeal to superior court.

■ Where an administrative agency's decision is alleged

to be arbitrary, capricious or contrary to law, as is the case here, this court possesses inherent power of review. *Hasan v. Frederickson,* 37 Wn. App. 800, 683 P.2d 203 (1984). Review is limited to the record of the administrative tribunal. *Stastny v. Board of Trustees,* 32 Wn. App. 239, 647 P.2d 496 (1982), *cert. denied,* 460 U.S. 1071 (1983). This is the standard governing our review.

First, EWU contends RCW 28B.16.120(2)[1] requires employees to appeal within 30 days of the effective date of their reduction, suspension or demotion. EWU argues similar statutory time limits have been held to be mandatory and jurisdictional. *Rutcosky v. Board of Trustees,* 14 Wn. App. 786, 545 P.2d 567 (1976); *Rust v. Western Wash. State College,* 11 Wn. App. 410, 523 P.2d 204 (1974). We do not find these authorities controlling.

██ The appeal was not taken pursuant to RCW 28B.16.120(2). Instead, the employees' appeals were taken under WAC 251-12-075,[2] promulgated by HEPB. This rule provides that higher education personnel law or rule violations may be appealed "within thirty calendar days after the effective date of the action appealed." HEPB interpreted this rule to allow an appeal within 30 days from the date on which the employees or their representative could reasonably have had knowledge of the facts constituting the violation. "The construction of a rule by the agency which promulgated it is entitled to great weight." *Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 379, 561 P.2d

---

[1]RCW 28B.16.120(2) provides in part:

"Any employee who is reduced, dismissed, suspended, or demoted, after completing his probationary period of service as provided by the rules and regulations of the board, shall have the right to appeal to the board not later than thirty days after the effective date of such action."

[2]WAC 251-12-075 provides in part:

"Any employee, employee representative or appointing authority desiring to appeal an alleged violation of the higher education personnel law or rules adopted thereunder, may appeal such alleged violation to the board. Such appeal must be in writing and be filed in the office of the director within thirty calendar days after the effective date of the action appealed."

195 (1977); *Washington State Employees Ass'n v. Cleary,* 86 Wn.2d 124, 542 P.2d 1249 (1975). The rationale for HEPB's interpretation is not without support:

> In determining whether to apply the discovery rule, the possibility of stale claims must be balanced against the unfairness of precluding justified causes of action. That balancing test has dictated the application of the rule where the plaintiff lacks the means or ability to ascertain that a wrong has been committed.

(Citations omitted.) *U.S. Oil & Ref. Co. v. Department of Ecology,* 96 Wn.2d 85, 93, 633 P.2d 1329 (1981). Thus we do not find HEPB's interpretation of its own rule to be unreasonable or arbitrary and capricious.

Nevertheless, EWU argues HEPB did not have authority to promulgate WAC 251-12-075 and therefore did not have jurisdiction to order reinstatement of these employees. We disagree.

In *State ex rel. Washington Fed'n of State Employees v. Board of Trustees,* 93 Wn.2d 60, 66, 605 P.2d 1252 (1980), the court stated:

> The HEPB is an administrative agency created to enforce RCW 28B.16, the State Higher Education Personnel Law. *See* RCW 28B.16.060. Under this chapter the major terms and conditions of employment of classified employees of state institutions of higher education are regulated by the HEPB. *See* RCW 28B.16.100.

The stated purpose of the act HEPB is charged with enforcing is to

> establish a system of personnel administration for the institutions of higher education in the state which is based on merit principles and scientific methods, and which governs the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plans, removal, discipline, and welfare of employees covered under this chapter.

RCW 28B.16.010.

The agency's general grant of authority in RCW 28B.16-.100 directs the board to adopt rules regarding the basis and procedures to be followed for "(9) [l]ayoffs when nec-

essary and subsequent reemployment". Administration of HEPB rules by the institutions is subject to review by the board. RCW 28B.16.101. The manner of review is not specified by the statute, and by promulgating WAC 251–12–075, the board has afforded employees the opportunity to appeal violations of the layoff rules by the institution.

▆ Administrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented. *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 374, 610 P.2d 857 (1980). EWU has failed to show compelling reasons why the rule in question is in conflict with the intent and the purpose of the legislation. *Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 317, 545 P.2d 5 (1976). Clearly, HEPB has authority to police contracts for services traditionally provided by college personnel where those contracts have the effect of terminating classified employees. *Cunningham v. Community College Dist. 3*, 79 Wn.2d 793, 489 P.2d 891 (1971). We hold HEPB acted within its authority in promulgating WAC 251–12–075.

Finally, EWU contends the decision to reinstate was arbitrary and capricious and should be reversed. It contends the board erred when it found "the evidence regarding the amount of work involved to be relevant only for the purpose of determining whether the appeals were timely filed", declined to "determine exactly how much work was actually displaced", and instead found the amount to be significantly more than de minimis. We affirm the HEPB decision.

The board received uncontradicted testimony that the work done under the Sea–First contract included data processing for all loan, housing and tuition payments, altogether about 17 different types of transactions. The work done by DPS included key entry for direct payments to the cashier's office, accounts payable and receivable, disbursements, preparation of course catalogs, extension correspondence, faculty activity records, social security refund

requests, receipts for student registration fees and facility use fees, such as dining room, parking, course, physical education, bookstore, and the conference center. This was the work performed by the employees that were given lay-offs. The evidence supports the finding that these contracts had the effect of terminating classified employees and violated RCW 28B.16.240. In these circumstances, HEPB correctly found the contracts had more than a de minimis effect and ordered the reinstatement. This finding is supported by the evidence. EWU's argument based on evidence of dubious weight that there was lack of work for these employees misses the issue and is rejected.

■ "Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances." *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980). Our review of the record fails to reveal the HEPB decision to be arbitrary or capricious and the decision must be affirmed.

Affirmed.

McINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court October 4, 1985.