150 P.3d 161 (2007)
Thomas A. CLARK; Jeff Cobb; Todd P. Durham; John A. Pagel, Jr.; and Paul Peter, individuals and as representatives of a class of overtime eligible employees of the City of Kent Police Department, Respondents,
v.
CITY OF KENT, a political subdivision of the state of Washington, Appellant.
No. 57359-4-I.
Court of Appeals of Washington, Division 1.
January 16, 2007.
*162 Bruce L. Schroeder, Elizabeth Rose Butle Kennar, Denise L. Ashbaugh, Seattle, WA, for Appellant City of Kent.
William B. Aitchison, Mark A. Crabtree, Portland, OR, Jeffrey Julius, Hilary H. McClure, Seattle, WA, for Respondent Thomas A. Clark.
George E. Merker, III, Merker Law Offices, Bainbridge Island, WA, James Michael Cline, Aaron David Jeide, Seattle, WA, for Amicus Lawson.
Jeffrey Moss Slayton, Seattle City Attorneys Office, Seattle, WA, for Amicus City of Seattle.
COX, J.
¶ 1 May a city that pays its employees twice per month, in order to facilitate bookkeeping, maintain a payroll system in which wages earned up to 14 days before each payday are withheld from a current pay period and paid on the following regular payday? We hold that WAC 296-128-035 does not preclude such a system. Accordingly, we reverse the summary judgment in favor of plaintiffs, who are employees of the City of Kent, and remand for further proceedings.
¶ 2 The City of Kent pays its police department employees ("the employees") on established paydays on the 5th and 20th of each month. All regular wages earned by the employees from the 1st through the 15th of each month are paid on the next regular paydaythe 20th of that month. Likewise, all regular wages the employees earn from the 16th through the end of the month are paid on the next regular paydaythe 5th of the following month. The employees do not challenge this five-day lag time between the end of the pay period and the corresponding payday.
¶ 3 The City treats the payment of overtime or other irregular pay differently within its payroll system. For bookkeeping purposes, overtime and other irregular pay requires additional processing time. Accordingly, such pay for the period up to 14 days in advance of a regular payday is sometimes not paid on the upcoming payday. Rather, it is paid on the following regular payday.
¶ 4 The employees sued the City, alleging that the delay in the payment of irregular pay violates the provisions of WAC 296-128-035. That regulation sets forth payment interval requirements for certain employers. The parties made cross-motions for summary judgment. The court granted the employees' motion. It denied the City's motion as well as its motion for reconsideration.
¶ 5 We granted discretionary review.

WAC 296-128-035
¶ 2 The City argues that the seven-day period specified in WAC 296-128-035 to facilitate bookkeeping does not apply to its twice per month payroll system. Specifically, the City argues that it may, for bookkeeping purposes, withhold overtime and other irregular pay that is earned up to 14 days before each regular payday and pay those amounts on the following regular payday. We agree.
¶ 7 Summary judgment is appropriate if there are no genuine issues of material fact and the non-moving party is entitled to judgment as a matter of law.[1] The interpretation of a statute is an issue of law that is appropriate for disposition on summary judgment.[2] We review de novo the trial court's interpretation of a statute.[3]
¶ 8 When interpreting an administrative regulation, we follow the general rules of statutory construction.[4] Our primary goal is to determine and give effect to the agency's intent and the regulation's underlying policies.[5] If the language of the regulation is clear, its plain meaning will reveal the agency's intent.[6] As with statutes, a regulation is to be considered as a whole, giving meaning *163 to all of its parts.[7] Strained meanings and absurd results should be avoided.[8] When interpreting statutes and regulations, courts are not required to abandon their common sense.[9] If the language of the regulation is ambiguous in that it is subject to more than one reasonable interpretation, we may look to outside sources such as legislative history to determine the agency's intent.[10]
¶ 9 An agency's interpretation of an ambiguous statute it is charged with administering is entitled to great weight.[11] Washington courts have recognized that even more deference is owed to an agency's interpretation of its own regulation than to its interpretation of a statute.[12]
¶ 10 Here, there are no genuine issues of material fact. Thus, our inquiry is limited to the question whether the employees were entitled to judgment as a matter of law.
¶ 11 In 1989, the Washington State Department of Labor and Industries ("L & I" or "the agency") promulgated the following regulation pursuant to RCW Chapter 49.46, the Washington Minimum Wage Act ("WMWA"):
All wages due shall be paid at no longer than monthly intervals to each employee on established regular pay days. To facilitate bookkeeping, an employer may implement a regular payroll system in which wages from up to seven days before pay day may be withheld from the pay period covered and included in the next pay period.[[13]]
A close reading of the text of this regulation shows that it is subject to more than one reasonable interpretation. Thus, it is ambiguous.
¶ 12 The first sentence of the regulation establishes one month as the maximum interval for the payment of wages by the employers subject to the regulation.[14] It also requires payment of wages on "established regular pay days." There does not appear to be any dispute between the parties that the City has "established regular pay days"the 5th and 20th of each monthor that its twice per month payment schedule conforms to this provision of the regulation.
¶ 13 The second sentence of the regulation appears to be the focal point of the dispute between the parties. That sentence addresses the effect of bookkeeping procedures on the timing of payment of wages. Specifically, it permits "an employer," in order "to facilitate bookkeeping" to withhold wages for up to seven days before a payday, provided those wages are "included in the next pay period."
¶ 14 We note that the employees do not explicitly dispute that the City needs up to 14 days before a payday to perform the additional work necessary "to facilitate bookkeeping." Nor do they argue that this time is unreasonable to accomplish the required bookkeeping tasks. Rather, the employees base their argument on the wording of the regulation. They contend that the regulation prohibits withholding wages for any period in excess of seven days before a payday whether *164 or not the City pays the withheld wages on the next regular payday.
¶ 15 Our difficulty with the employees' argument is based on several observations. First, in reading the second sentence of the regulation in context, we are uncertain of the meaning of "an employer." It is unclear whether these words mean "all employers" affected by the regulation, or only a subset of all employers. If the words were intended to have the former meaning, the regulation would use the word "all" to describe the affected employers. It does not.
¶ 16 Additionally, the word "may" in the second sentence is permissive, not prohibitive. It indicates that "an employer" has an option to take seven days for processing payrolls. Nothing in this language necessarily prohibits an employer from taking longer than seven days to process pay under appropriate circumstances.
¶ 17 Turning again to the first sentence of the regulation, it states that "All wages due" shall be paid on "established regular pay days," but does not specify when such wages become "due." The employees argue that wages are "due" when earned and that if the exception set forth in the second sentence does not apply to the City, it must pay all wages (including, presumably, regular pay and the pay at issue in this case) earned up to the regular payday, without any delay. The practical effect of accepting this argument is to disregard the need for employers to have a reasonable time to manage any additional work required "to facilitate bookkeeping." For example, in the case before us, the City processes overtime and other irregular pay differently than its regular payroll. At the same time as it is processing its irregular pay, it maintains its payment of regular wages on its established paydays.[15] Yet, the employees would have us disregard the additional time needed to process overtime and adhere to a seven day cutoff. This makes no sense.
¶ 18 We turn for guidance on the meaning of the regulation to the agency's interpretation of the regulation that was in existence at the time of the events in this case. That interpretation is set forth in ES.C.5, issued on January 2, 2002. That guideline states, "Employees must be paid all wages due for the pay period on the established payday."[16] More importantly, it also expressly states that the seven-day processing period "applies to monthly payrolls."[17] We read that expression of intent to exclude from the scope of that sentence the twice per month payment schedule that is at issue in this case.
¶ 19 The ES.C.5 guideline is consistent with the two prior guidelines it supersedes.[18] One, issued in 1992, states in relevant part, "For monthly payrolls only, no more than 7 calendar days prior to the pay date may be withheld."[19] The other, also issued in 1992, states in its entirety:
The withholding limitation of up to 7 days pay for bookkeeping purposes only applies when employers elect pay periods at one month intervals, which is the maximum allowable interval between pay periods. There is no regulation providing for a withholding limitation for bi-weekly or other pay periods of less than one month.[[20]]
¶ 20 These guidelines illustrate that the agency only intended the second sentence of the regulation to apply to monthly paydays. More importantly, there is currently no express *165 limit on the processing period for those who pay their employees more frequently than once monthly. According to the guidelines, it has been the agency's consistent policy to allow employers some reasonable amount of time to process their payroll. Through the regulation, the agency intended to limit that processing time to seven days if employers only pay their employees on a monthly basis.
¶ 21 There is other evidence of the regulation's history that supports the City's position. In general, it appears that the agency's primary goal in passing the regulation was to ensure that employees are paid at least once per month.[21] The explanation of the original draft of the rule was "to pay employee wages at least monthly."[22] The related regulation WAC 296-126-023[23] was amended to add the second sentence, making it identical to WAC 296-128-035. The agency explained the purpose of the change: "A sentence is added to clarify that the existing policy allowing payroll lag continues."[24]
¶ 22 Finally, when asked to examine the City's specific payment practices at issue in this case, a representative of L & I recently concluded that the City was not in violation of WAC 296-128-035.[25] This statement is consistent with the written interpretations of the regulation that we have discussed.
¶ 23 Taking all of this information together, it is apparent that when enacting and interpreting WAC 296-128-035, the agency has always intended employers to have some lag time in paying their employees. However, the lag time is limited to seven days in the case of employers who pay their employees only once per month. Because the City pays its employees twice per month, that rule does not apply to this case.
¶ 24 The employees argue that if the seven-day processing period does not apply to twice per month pay periods, then no processing time is allowed. As we have already stated, that is an absurd interpretation and we reject it.
¶ 25 The employees cite Biggs v. Wilson,[26] interpreting the Fair Labor Standards Act ("FLSA"),[27] in support of their argument that a delay in payment is as harmful as no payment at all. Biggs is distinguishable. That case involved delay in all regular pay due to the employer's inability to make the payments, not delay in overtime or irregular pay due to extra time needed to process those payments. Federal law allows for some "reasonable" amount of processing or lag time under the FLSA for irregular pay such as overtime,[28] which was not at issue in Biggs. Here, we are not faced with a situation where an employer is withholding all pay indefinitely until it can meet its financial obligation, similar to the facts in Biggs. Rather, the City only seeks a short period of time to process overtime and other irregular payments.
¶ 26 For all of these reasons, WAC 296-128-035 is ambiguous on its face. However, the regulation's history and official agency interpretations show that the agency always intended for employers to have time for bookkeeping. The seven-day processing period in the regulation was only intended to be applied to employers who have established monthly paydays, so that the longest any employee would go without pay would be one month plus seven days. The agency intended for all other employers, those who pay their employees more frequently than monthly, *166 to have a period of time for processing that need not be limited to seven days. The City's interpretation of the regulation is correct, and summary judgment below was improper.
¶ 27 Because we have resolved the issue before us on these grounds, we need not address whether the employees have a right of action for money damages against the City on these facts.[29]
¶ 28 We reverse the summary judgment order and remand for entry of summary judgment in favor of the City of Kent and for such further proceedings as are appropriate.
WE CONCUR: ELLINGTON and GROSSE, JJ.
NOTES
[1] CR 56(c).
[2] See Castro v. Stanwood Sch. Dist. No. 401, 151 Wash.2d 221, 224, 86 P.3d 1166 (2004).
[3] See id.
[4] Cannon v. Dep't of Licensing, 147 Wash.2d 41, 56, 50 P.3d 627 (2002).
[5] Id.
[6] Id. at 56-57, 50 P.3d 627.
[7] See State v. Keller, 143 Wash.2d 267, 277, 19 P.3d 1030 (2001).
[8] State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989).
[9] Allison v. Housing Authority, 118 Wash.2d 79, 86, 821 P.2d 34 (1991) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 104 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).
[10] Cannon, 147 Wash.2d at 56-57, 50 P.3d 627.
[11] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813-14, 828 P.2d 549 (1992).
[12] See Hayes v. Yount, 87 Wash.2d 280, 289, 552 P.2d 1038 (1976) ("[W]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.") (quoting Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)); see also Tuerk v. Dep't of Licensing, 123 Wash.2d 120, 126, 864 P.2d 1382 (1994) ("[T]he power to enforce a regulation implies the concomitant authority to interpret that regulation."); Barrington v. Eastern Washington University, 41 Wash.App. 259, 263-64, 703 P.2d 1066 (1985) (giving "great weight" to the agency's interpretation of its own regulation, and upholding it absent evidence it was unreasonable or arbitrary and capricious).
[13] WAC 296-128-035 (effective Jan. 24, 1989).
[14] The regulation applies to all "employers," defined broadly in the WMWA so as not to exclude public employers. See RCW 49.46.010(4).
[15] Assuming the City withholds overtime wages up to 14 days before the 5th or the 20th of each month, it pays that overtime at the next regular payday, which is no later than 30 days after such overtime is earned. That meets the requirements of the first sentence of the regulation that requires payment intervals of no more than one month for "all wages."
[16] Dep't of Labor & Industries, Admin. Policy No. ES.C.5 (2002) (superseding ES-020 and ES-030), Clerk's Papers at 144.
[17] Id. (emphasis added).
[18] Much of the regulation's history discussed in this opinion interprets WAC 296-126-023, which language is identical to WAC 296-128-035. See infra at note 23.
[19] Dep't of Labor & Industries, Interp. Guideline No. ES-020 (1992) (emphasis added). This suggests that there is no such seven-day limit for more frequent payrolls.
[20] Dep't of Labor & Industries, Interp. Guideline No. ES-030 (1992) (emphasis added).
[21] See Wash. St. Reg. XX-XX-XXX ("Summary: . . . monthly wage payment is established. . . . ").
[22] Id.
[23] WAC 296-126-023 is identical to the regulation at issue in this case and falls under Chapter 126, L & I's standards of labor for the welfare of all employees. According to L & I's program manager, both regulations apply to the City. Clerk's Papers at 64.
[24] Wash. St. Reg. XX-XX-XXX (emphasis added).
[25] (Letter of Richard Ervin, Program Manager for L & I, March 16, 2005), Clerk's Papers at 64.
[26] 1 F.3d 1537 (9th Cir.1993).
[27] 29 U.S.C. § 201.
[28] See 29 C.F.R. § 778.106 (allowing employers to pay overtime "as soon after the regular pay period as is practicable," but no later than the following payday, if the delay is "reasonably necessary"); O'Brien v. Town of Agawam, 350 F.3d 279, 298 (1st Cir.2003).
[29] See Champagne v. Thurston County, 134 Wash. App. 515, 141 P.3d 72 (2006) (concluding there is no cause of action for money damages for an alleged violation of WAC 296-128-035).