931 P.2d 885 (1997)
131 Wash.2d 309
The WASHINGTON STATE LEGISLATURE; Sid Snyder; and Brian Ebersole, Appellants,
v.
Mike LOWRY, Governor of the State of Washington; State of Washington, Respondents.
No. 63055-1.
Supreme Court of Washington, En Banc.
Argued March 5, 1996.
Decided February 27, 1997.
*887 Vandeberg & Johnson, Elvin J. Vandeberg, Clifford D. Foster, Jr., Jamie L. Siegel, Attorney at Law, Tacoma, for appellants.
Christine Gregoire, Attorney General, Maureen Hart, Solicitor General, Olympia, for respondents. *886
*888 TALMADGE, Justice.
Governor Mike Lowry vetoed portions of bills enacted in the 1994 session of the Legislature. Rather than overriding the vetoes, the Legislature filed a declaratory judgment action in the Thurston County Superior Court seeking to invalidate them. The Legislature asked the court to establish limiting parameters of the Governor's veto authority under article III, section 12 of the Washington Constitution.
There is no more difficult and controversial aspect of relations between our branches of government than the Governor's use of the veto. Historically, Legislatures and Governors have sought to gain political advantage, the Legislature by carefully drafting legislation to avoid vetoes, and the Governor, by vetoing all or parts of bills.
Pursuant to our historical, constitutional role, we intervene in this controversy to uphold both the power of the Legislature to write legislation as it may choose, and the power of the Governor to exercise the general and line item veto. In this opinion, we seek to delineate and maintain the proper constitutional balance between the coordinate branches of our State government with respect to the veto.

ISSUES
1. Does the veto power of the Governor extend to portions of legislation not formally denominated as sections by the Legislature?
2. Does the veto power of the Governor extend to provisions in appropriations bill that condition how specific sums of money may be spent?
3. Does the veto power of the Governor extend to provisions in appropriations bills that condition how money may be spent, but do not reference a specific sum of money?
4. Does the veto power of the Governor extend to provisions in appropriations bills reducing expenditures?

FACTS
In the 1994 legislative session, the Legislature enacted various bills that Governor Lowry vetoed at least in part. The Legislature did not override the Governor's veto by two-third votes of both houses, as authorized by article III, section 12 of the constitution. Instead, the Legislature commenced a declaratory judgment action against the Governor in the Thurston County Superior Court, contesting the validity of the vetoes under article III, section 12.
The vetoes at issue fall into three broad categories. The first relates to the Governor's veto of subsections of legislation, each of which repealed an entire act or section of an act.[1] While the Legislature designated these repealers as "subsections," the Governor contended the subsections were, in fact, sections of a bill to which his veto power extended. With respect to ch. 143, Laws of 1994, for example, § 513 of the legislation contains 103 numbered subsections, each repealing an entire legislative act or section of an act.
The second broad category pertains to the Governor's vetoes of language conditioning how an agency may spend an appropriation.[2] However, there are two subsets of such budget provisos[3] before us. "Dollar provisos" are subsections of appropriations bills conditioning the appropriation to an agency on compliance with legislative direction that certain funds be spent or not be spent, or the agency take or not take certain action. For example, § 135 of Laws of 1994, 1st Sp. Sess., ch. 6, appropriates $41,497,000 to the Department of General Administration, but requires in § 135(9) that $171,000 of the general appropriation be spent only for the purpose of a statewide co-location program.
*889 The second type, "nondollar provisos," makes no reference to a specific dollar amount. For example, in Laws of 1994, ch. 303, § 5, the Legislature appropriated $145,609,000 to the Washington State Patrol Field Operations Bureau, but conditioned the appropriation by stating in § 5(4) only commissioned officers may be issued motor vehicles by the Washington State Patrol. This nondollar proviso makes no reference whatsoever to a monetary amount associated with the use of the vehicles.
Finally, the Governor vetoed sections of a transportation appropriations bill where the Legislature reduced an appropriation, but conditioned the reduction on certain actions.[4] In Laws of 1994, ch. 303, § 5, the Legislature reduced the appropriation to the State Patrol Highway account by more than $2 million, but established a new proviso setting the maximum amount that could be spent on breathalyzers and established accounting procedures for the federal funds received by the Patrol for providing security at a national legislative conference. The Governor vetoed the reduction, but left the new provisos intact.
The trial court, the Honorable Wm. Thomas McPhee, granted summary judgment on May 1, 1995, declaring the Governor's vetoes of subsections invalid. The trial court, however, determined the Governor's vetoes of appropriations bill provisos were valid and the appropriations were not affected by the vetoes. Likewise, the trial court ruled the Governor's vetoes of appropriations reductions were valid and did not alter the provisos to such appropriations that remained. Both parties appealed and we granted direct review. RAP 4.2(a).

ANALYSIS
The Washington Constitution confers upon the Governor general veto authority over legislation and a distinct veto power over "appropriation items":
If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items ... Provided, That he may not object to less than an entire section, except that if the section contain one or more appropriation items he may object to any such appropriation item or items.
WASH. CONST., art. III, § 12 (amend.62). Under the general veto power, the Governor may veto a whole bill or a section of a bill. Additionally, the Governor's constitutional veto power, traditionally described as the line item veto power, also extends to "appropriation items."
Washington's Constitution has contained a broad veto power for the Governor since statehood.[5] The Governor's veto extended to full bills, sections of bills and items in bills. CONST. 1889, art. III, § 12 ("one or more sections or items"). The scope of article III, section 12, as originally adopted, was limited by the 62nd Amendment in 1974. The item veto power of the Governor was limited to appropriations items, restricting a practice, initiated by Governor Rosellini and used by Governor Evans, to veto items in nonappropriations bills. See, e.g., Washington Ass'n of Apartment Associations, Inc. v. Evans, 88 Wash.2d 563, 564 P.2d 788 (1977); State ex rel. Ruoff v. Rosellini, 55 Wash.2d 554, 348 P.2d 971 (1960).
The general purpose of the appropriations item or line item veto is two-fold. First, it gives the Executive, who is elected statewide rather than from a particular district, the power to achieve fiscal constraint and to advance statewide rather than parochial fiscal interests; the Governor can excise unneeded "pork barrel" programs or projects from an appropriations bill so as to restrain public expenditures. This purpose of the line item veto is consistent with the requirement in the Budget and Accounting Act, RCW 43.88, that the Governor submit and the Legislature enact a balanced biennial operating budget. See Karcher v. Kean, 97 N.J. 483, 507, 479 A.2d 403 (1984) ("The constitutional line-item veto power serves the governmental *890 need to have a balanced budget in place at the start of the fiscal year"). See also Stephen Masciocchi, The Item Veto Power in Washington, 64 WASH. L. REV. 891, 892-93 (1989).
Second, a line item veto is designed to permit the Governor to disentangle issues so they will be considered on their individual merits. This policy is consistent with the constitutional framers' evident fear of legislative logrolling and the other checks on such logrolling placed in the Washington Constitution. Masciocchi, 64 WASH. L. REV. at 892-93 n. 13.
Despite the policy purposes underlying the veto power, courts, legislators, and Governors have had significant difficulties defining a "section" and "appropriation item." We attempt here, in the Court's constitutional role as interpreter of the Washington Constitution, to set forth operating guidelines.
A. SECTION VETOES
The Legislature argues Governor Lowry may veto only complete sections of a bill, and the Legislature has sole discretion to designate sections, citing Washington State Motorcycle Dealers Ass'n v. State, 111 Wash.2d 667, 763 P.2d 442 (1988) (Motorcycle Dealers). The Governor asserts the vetoed provisions constitute entire de facto sections even though they fall under subsection headings. The trial court agreed with the Legislature.
The checkered history of the use of gubernatorial vetoes over sections of legislation substantially demonstrates the creativity of both the legislative and executive branches of government. At one extreme, in Washington Ass'n of Apartment Ass'ns, Inc. v. Evans, 88 Wash.2d 563, 564 P.2d 788, this Court confronted a creative exercise of the gubernatorial veto power when Governor Evans vetoed provisions of the 1973 Residential Landlord Tenant Act in such a way as to completely rewrite portions of the legislation. We held article III, section 12 prohibits use of the veto power to reach a new or different result than the Legislature intended. A Governor could use the veto power only to prevent an act or a part of an act from becoming law. See generally Timothy P. Burke, The Partial Veto Power: Legislation by the Governor, 49 WASH. L. REV. 603 (1974).
At the opposite end of the spectrum, in Fain v. Chapman, 94 Wash.2d 684, 619 P.2d 353 (1980), the Legislature enacted legislation containing numerous separately identifiable subjects as a single legislative section. The plain purpose of the "section" designation was to circumvent a veto. We held whether a vetoed portion of legislation constitutes a section under article III, section 12 was a question of law to be decided by the courts, and although the sections drafted by the Legislature are entitled to considerable weight, they are not dispositive of the courts' consideration of the Governor's constitutional veto power. We upheld Governor Ray's veto of a portion of legislation, which, in creating certain judicial positions, purported to address how the positions would be filled. See Heidi A. Irvin, Note, Washington's Partial Veto Power: Judicial Construction of Article III, Section 12, 10 U. PUGET SOUND L. REV. 699 (1987). See also Cascade Tel. Co. v. Tax Comm'n, 176 Wash. 616, 619, 30 P.2d 976 (1934) (meaning of "section" not limited by the "artificial construction of the legislative measure").
Finally, in Motorcycle Dealers, we considered the validity of the Governor's vetoes of certain portions of an act the Legislature had denominated as subsections, as well as entire sections of the bill. After recounting the history of Governors' increasing use of the item veto, the Court discussed Senate Joint Resolution 140, adopted by the people as the 62nd Amendment to the Washington Constitution in 1974 to resolve competing contentions about the proper use of the item veto:
The amendment wrought three things. First, it limited use of the item veto to appropriation bills. Second, it added a new express prohibition against partially vetoing anything less than "an entire section" (italics ours) of a nonappropriation bill. And third, it provided the Legislature with authority to reconvene itself into extraordinary session within 45 days of adjournment to override vetoes.
Motorcycle Dealers, 111 Wash.2d at 673, 763 P.2d 442. We ultimately held the veto applied *891 only to "entire sections of nonappropriation bills, not portions of sections." Id. We overruled Fain and held whatever the Legislature deems to be a section will be held to be a section by the courts for purposes of article III, section 12. The trial court below followed the Motorcycle Dealers approach and held that a legislative designation of a section is dispositive of whether a section in a bill is a section to which the Governor's veto power under article III, section 12 applies.
The dissent argues the majority opinion effectively overrules the Motorcycle Dealers case, Dissent at 899, and asserts the majority opinion adopts the "separate subject test" for gubernatorial vetoes. Neither contention is correct.
The Court in Motorcycle Dealers, however, was not confronted with a case of legislative manipulation of the designation of sections in a bill to forestall exercise of the gubernatorial veto. Here, the Legislature drafted § 513 of the Laws of 1994, ch. 143 to include 103 numbered subsections. Each subsection repealed an entire existing act or section of our code. The Governor vetoed two subsections of § 513 which repealed full sections of other enactments. It is difficult to understand how the repeal of an entire section of the Revised Code of Washington can escape the Governor's section veto power simply because the Legislature designated the repeal a "subsection" of a larger section of a bill. Each of the "subsections" of § 513 was previously a "section" of a bill.
The legislative drafting to evade the gubernatorial veto in this case is easier to detect than in Fain, where the Legislature chose to place numerous substantive provisions in a single section of a bill. An imaginative legislator can include a variety of popular and unpopular provisions that normally would appear in separate sections of the larger piece of legislation in a single section so as to circumvent the gubernatorial veto. If the Court does not perceive and correct such attempted action, the Governor is left with the Hobson's choice of vetoing the entire legislation (the other more than 100 RCW sections repealed by § 513 were obviously acceptable to the Governor) or letting the entire legislation become law.
Motorcycle Dealers should not be read to compel this Court to refrain from any involvement with the Governor and the Legislature over the veto power. the so-called bright-line rule advocated by the dissent stating the courts defer absolutely to the Legislature on the designation of a section will not end the tension between the branches over the veto power. Obviously, Motorcycle Dealers did not put the issue to rest, as the present case attests.
We decline to abandon our constitutional responsibility to referee disputes between the branches. If the Court withdraws from the fray, the delicate constitutional balance the Framers erected and the people amended between the executive and legislative branches with respect to the veto power is upset. If this Court declines to exercise its constitutional responsibility to define a "section" to which the Governor's veto applies, it entrusts the sectional veto to the sole discretion of the Legislature, a result the Framers clearly did not intend. Our constitution condones neither artful legislative drafting nor crafty gubernatorial vetoes. We must carry out our mandate as the Supreme Court of Washington to decide whether legislative designation of sections is true to the spirit of the constitution.
Only rarely, and reluctantly, as Motorcycle Dealers mandates, will we be drawn into the controversy between the Governor and the Legislature over the definition of a section. We defer to the Legislature's designation of a section in a bill just as we defer to the Legislature's finding of facts. CLEAN v. State of Washington, 130 Wash.2d 782, 928 P.2d 1054 (1996); City of Tacoma v. Luvene, 118 Wash.2d 826, 851, 827 P.2d 1374 (1992); State ex rel. Hamilton v. Martin, 173 Wash. 249, 257, 23 P.2d 1 (1933). The Legislature's designation of a section is conclusive unless it is obviously designed to circumvent the Governor's veto power and is "a palpable attempt at dissimulation." State ex rel. v. Martin, 173 Wash. at 257, 23 P.2d 1. But where, as here, we discern legislative drafting that so alters the natural sequences and divisions of a bill to circumvent the Governor's veto power, we reserve the right to strike down such *892 maneuvers. Similarly, if a Governor manipulates the veto power as in Washington Ass'n of Apartment Ass'ns, Inc., we will also intervene to forestall such conduct.[6]
We expressly decline to offer bright-line definitions of legislative or gubernatorial manipulation. Such definitions, rather than constraining, are more likely to provide guidelines for evasion should the Legislature or the Governor be so inclined. Our rare and reluctant involvement will be to ensure that neither the Legislature nor the Governor will so conduct its affairsthe Legislature in bill drafting and the Governor in exercising the vetothat the coordinate branch of government is substantially deprived of the fair opportunity to exercise its constitutional prerogatives as to legislation.
We uphold Governor Lowry's veto of the subsections here because the 103 "subsections" of a single section of the 1994 legislation involved repeal of whole sections of the Revised Code of Washington and were de facto "sections" of legislation to which the veto applies. Moreover, in the other bill, the subsection containing the repealer of a section of a bill also constituted a de facto "section" to which the veto applies.
B. VETOES OF APPROPRIATIONS ITEMS
1. Definition of an "Appropriations Item"
In drafting appropriations bills, the Legislature historically has made lump sum appropriations to agencies, but has used both provisos and appropriations to express policy determinations or further refine an appropriation to specific programs within an agency. The Legislature has not employed a true programmatic or line item budget. The Legislature has chosen to make general agency appropriations with provisos for policy or specific agency programs in budget bills, rather than setting out more specific programmatic appropriations where each program in the budget is found in a separate section of a budget bill. Masciocchi, 64 WASH. L. REV. at 895-96, 910-11. We must decide if such budget provisos are constitutional "appropriations items" subject to veto.
Article III, section 12 confers upon the Governor the power to veto appropriation items, to exercise a true line item veto, reviewing individual programs. By its very specific language, article III, section 12 envisions appropriation items as something less than an entire section of an appropriations bill.
Under this Court's analysis in Ruoff, virtually any component of an appropriations bill was subject to the veto as an appropriation item.[7] Relying on Ruoff, Washington governors began to veto sentences and phrases in general legislation that did not contain appropriations, often altering the meaning of substantive legislation. Masciocchi, 64 WASH. L. REV. at 894. This Court ended such practices for nonappropriations bills in Washington Ass'n of Apartment Ass'ns, Inc.
The intent of SJR 140, enacted in 1974 as the 62nd Amendment to the Washington Constitution, was to restore the veto power of the Governor to what it was understood to be prior to Ruoff. 1974 Senate Journal, 3d Ex.Sess. 89. Plainly, at that time, the Governor had a line item veto and an "item" was something less than a full section of a bill. We reject the dissent's unconventional notion that the 62nd Amendment repealed the Governor's line item veto. Dissent at 901.
The Legislature argues the Governor's line item veto power extends only to dollar amounts contained in an appropriations bill because language in an appropriations bill conditioning expenditure of funds does not constitute an "appropriations item." Br. of Appellant at 22-29. The Governor argues *893 veto of appropriations items can occur without any consequence to the overall expenditure of the agency. Br. of Resp't at 21-23. We disagree with both approaches.
The Legislature's view of an "appropriations item" is too narrow, and would eviscerate the Governor's line item veto power. The Governor's line item veto is designed to restrain unnecessary expenditures, and to allow the Governor, whose perspective is statewide as opposed to district-specific, to avoid pork barrel projects and advance the best interests of the State. On the other hand, while the Governor's view of an "appropriations item" is closer to our analysis of an "appropriations item" under article III, section 12, the Governor misreads the consequences of a line item veto of a budget proviso, giving too little deference to the Legislature's direction of how money may be spent.
Because the purpose of the Governor's "line item" veto is to excise line items in appropriations bills, we should give effect to such a purpose. The Legislature frustrates such a purpose, however, if it drafts budget bills as lump sum appropriations to agencies. The only feature of modern legislative bill drafting in Washington that resembles the traditional budget line item is the budget proviso.
Consequently, we hold that any budget proviso with a fiscal purpose contained in an omnibus appropriations bill is an "appropriations item" under article III, section 12. Thus, so long as the Legislature drafts budget bills as lump sum appropriations to agencies conditioned by provisos as we have defined them here, the Governor's appropriations item veto power extends to each such proviso.[8]
2. Effect of Veto of Dollar Provisos
Where the Legislature provides that the money appropriated may be used solely for a particular purpose, if the Governor vetoes such proviso language, the overall agency appropriation is reduced by the amount referenced in the proviso. For example, in Laws of 1994, 1st Ex.Sess., ch. 6, § 135, the Legislature appropriated $41,497,000 to the Department of General Administration, but conditioned the overall appropriation in § 135(9) on $171,000 being expended "solely" on a statewide collocation program. Governor Lowry vetoed § 135(9). By vetoing § 135(9), the Governor reduced the overall agency appropriation by $171,000.
Not all provisos are so clear. For example, in Laws of 1994, 1st Sp. Sess., ch. 6, § 610(5)(a), the Legislature conditioned an appropriation to the Higher Education Coordinating Board for financial aid and grant programs as follows:
$95,039,000 is provided solely for the state need grant program. Of this amount, a maximum of $249,000 may be expended to establish postsecondary education resources centers through the early intervention scholarship program to the extent that an equal amount of federal matching funds are also provided. The board shall, to the best of its ability, rank and serve students eligible for the state need grant and the early intervention scholarship program in order from the lowest family income to the highest family income.
The Legislature conditioned the appropriation to the Higher Education Coordinating Board on a maximum dollar figure that could be expended by the Board. If the Governor vetoes this proviso language, as Governor Lowry did, the overall appropriation to the agency ought not be reduced by a sum of $249,000 because it is unclear how much of the $249,000 might be expended by the Board in the biennium for the referenced purpose. The Board may spend nothing or up to $249,000. The Legislature limited the amount that could be used for this purpose. When the Governor vetoes such a subsection in an appropriations bill, the veto does not automatically reduce the appropriation to the agency by a sum certain because the proposed expenditure is not for a sum certain, *894 although the agency may not exceed the specified legislative cap on spending.[9]
Thus, the Governor's veto of a dollar proviso reduces the appropriation to the agency only when the Legislature expressly states the money may be used solely for the purpose set forth in the proviso. We look to the specific language in the appropriations bill to determine whether the Governor's veto of the proviso should result in a reduction in the overall appropriation to the agency.
3. Effect of Veto of Nondollar Provisos
The more difficult questions are whether nondollar budget provisos constitute "appropriations items" under article III, section 12, and the effect of the Governor's veto of such provisos. Nondollar provisos condition an agency appropriation on the agency's taking or not taking certain action. For example, the Legislature appropriated $145,609,000 to the Washington State Patrol for field operations. Laws of 1994, ch. 303, § 5. In section 5(4) of the legislation, the Legislature conditioned the appropriation as follows: "only commissioned officers and commercial vehicle enforcement officers involved directly and primarily in traffic enforcement activities will be assigned vehicles by the Washington state patrol."
Provisos in appropriations bill that do not have a specific dollar amount are very common. At their best, such nondollar provisos are a legitimate expression of the Legislature's oversight function over agencies and programs. At their worst, such provisos are legislative micromanagement of agencies or a device to revive substantive legislation that perished during a legislative session. For example, in Laws of 1994, ch. 303, § 2(2), the Legislature conditioned an appropriation to the Traffic Safety Commission as follows:
It is the intent of the legislature that the responsibilities of and appropriation to the Washington traffic safety commission be transferred to the Washington state patrol as of July 1, 1994. The appropriations in this section represent funding necessary to operate the agency for fiscal year 1994 only.
Similarly, in Laws of 1994, ch. 303, § 7(3), the Legislature conditioned a $63.525 million appropriation to the State Patrol's support services bureau:
It is the intent of the legislature that: (a) There be no cadet classes during the 1993-95 biennium; and (b) the chief of the Washington state patrol shall maintain the current field force level of seven hundred troopers and sergeants through management reductions.
The Legislature argues these nondollar provisos are not "appropriations items," basing this contention largely on a Senate floor colloquy between sponsors of a 1974 constitutional amendment adopted by the people as article III, section 12:
Senator Grant: "[I]t is our intent, the intent of the sponsors of this measure, that he could not veto less than an entire section, a proviso that was less than an entire section, except for the appropriations amount."
Senator Dore: "When referring to appropriation item in the bill you are talking about a dollar amount."
Senator Grant: "That is correct, Senator."
Senate Journal, 43d Legislative, 3d Ex.Sess. 116 (1974). The intent of legislative sponsors of a measure is noteworthy, but not conclusive as to our interpretation of the plain language of a measure. Chrysler Corp. v. Brown, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 154-55, 839 P.2d 324 (1992) ("a legislator's comments from the floor are not necessarily indicative of legislative intent"); North Coast Air Servs., Ltd. v. Grumman Corp., 111 Wash.2d 315, 325-26, *895 759 P.2d 405 (1988) (legislative colloquy not conclusive as to legislative intent).
Nondollar provisos must be "appropriations items" under the constitution, as the rationale for application of the line item veto to dollar provisos applies with equal force to nondollar provisos. This interpretation is consistent with the real purpose of such provisos and the tenor of our constitution. In any event, these nondollar provisos are intimately connected to the expenditure of funds by executive agencies and cannot be viewed in isolation from such expenditures. Our general case law on statutory provisos requires such an interpretation.[10]
For example, in State v. Wright, 84 Wash.2d 645, 652, 529 P.2d 453 (1974), we reaffirmed a long-standing rule for the interpretation of statutory provisos:
[A] proviso in a statute must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith. Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions.
See Garvey v. St. Elizabeth Hosp., 103 Wash.2d 756, 697 P.2d 248 (1985); Pfeifer v. City of Bellingham, 112 Wash.2d 562, 772 P.2d 1018 (1989). Reading nondollar budget provisos in pari materia with the appropriations they reference compels the conclusion they are "appropriations items."
Our constitution also evidences a clear policy that bills should pertain to single subjects and should not be encumbered by "riders" containing divergent subjects, as is the practice in Congress; our Framers vigorously opposed legislative logrolling. Washington Fed'n of State Employees v. State, 127 Wash.2d 544, 566-67, 901 P.2d 1028 (1995) (Talmadge, J., concurring in part/dissenting in part).[11] To treat nondollar provisos as something other than appropriations items to which the line veto does not extend only encourages legislative logrolling, forestalls treatment of policy issues on their individual merits, and ultimately undercuts the benefits of the line item veto.
If the only alternatives for the Governor are vetoing a nondollar proviso (and the attendant veto of the whole agency or program appropriation it conditions) or allowing the proviso to remain, the Governor very likely will not exercise the veto. The salutary effect of the line item veto to compel fiscal responsibility is lost. For instance, it is unlikely the Governor would risk the biennial appropriation for the State Patrol's field operations over a disagreement with the Legislature about the officers' use of vehicles, even if the legislative proviso is fundamentally unwise. Moreover, it is difficult to imagine a Legislature would ever intend to eliminate the entire biennial appropriation for an agency simply because the Governor vetoes a nondollar amount proviso in an appropriations bill.[12]
The Legislature's suggested approach defeats sound public policy from the point of view of both the legislative and executive *896 branches of government, and would encourage legislators to weave substantive policy provisions and fiscal measures into appropriations bills, thereby legitimizing Byzantine bill drafting in appropriations measures. To the extent we immunize nonappropriations provisos in appropriations bills from the Governor's veto, the Legislature will try to slip substantive law provisos into appropriations bills to derive political advantage against the executive, thereby upsetting the constitutional framework of checks and balances. Nondollar budgetary provisos carry significant policy implications and should be addressed individually, on the merits, as substantive legislation; policy should be made in a formal bill subject to the normal legislative process.[13] The Governor's line item veto should extend to nondollar provisos in appropriations bills.[14]
This interpretation is consistent with that of other state constitutions. Rios v. Symington, 172 Ariz. 3, 833 P.2d 20 (1992); State ex rel. Coll v. Carruthers, 107 N.M. 439, 759 P.2d 1380 (1988); Karcher v. Kean, 97 N.J. 483, 479 A.2d 403 (1984).
In summary, the Constitution did not limit the Governor's choice either to veto the entire field operations budget of the Washington State Patrol or to allow the entire section to become law. We hold nondollar provisos are "appropriations items" for purposes of the Governor's line item veto. We hold the Governor may veto a nondollar proviso in an appropriations bill without diminishing the overall agency appropriation.[15]
C. REDUCTIONS IN APPROPRIATIONS
Where the Legislature reduces an appropriation and enacts new budget provisos for the appropriation supplementing previously enacted provisos, the Governor's veto of the reduction in the appropriation does not require the deletion of the new conditions, as the Legislature contends.
The new conditions relate to the entire appropriation made during the prior legislative session and must be read in pari materia with that overall appropriation as affected by the Governor's veto. The Governor is a part of the legislative process and a veto renders a legislative action as if it had not occurred. Hallin v. Trent, 94 Wash.2d 671, 619 P.2d 357 (1980); Washington State Employees Ass'n v. Cleary, 86 Wash.2d 124, 126, 542 P.2d 1249 (1975). The Legislature does not offer any reason why the Governor must veto the new provisos that are unrelated to the reduction. Forcing the Governor to do so would effectively transform the item veto into a section veto. Accordingly, we hold the Governor's vetoes of appropriation reductions are valid and do not affect budgetary provisos enacted by the Legislature with respect to the overall section in the appropriations bill.

CONCLUSION
The Supreme Court must not abdicate its constitutional duty to act as an impartial referee of constitutional disputes *897 between the legislative and executive branches of government in cases involving the gubernatorial veto. We should be steadfast in exerting a limited, and cautiously exercised, judicial responsibility with respect to the veto power to make sure neither the Legislature nor the Governor takes unfair advantage, and the balance our constitution envisions endures.
Lost in the discussion of the Governor's line item veto by the parties in this case is the fact the Legislature has a ready constitutional remedy if it is aggrieved by the Governor's action. The Legislature has the final say on the Governor's veto. Indeed, after the passage of the 62nd Amendment, the Legislature can even call itself into session to consider gubernatorial vetoes. Though the Legislature has reluctantly exercised this power to override a veto in the past, we should be loathe to limit the Governor's line item veto power when this constitutional remedy is available to the Legislature.[16]
In conclusion, we reverse the trial court order on summary judgment and uphold the Governor's veto of the sections of the bills in this case that were improperly designated as subsections. We affirm the trial court's order with respect to the Governor's veto of dollar and nondollar appropriations bill provisos and reductions of expenditures in appropriations bills. We modify the trial court's order as to provisos that condition agency expenditures on use of funds "solely" for purposes detailed in a proviso. We remand this case to the Thurston County Superior Court for entry of an order consistent with this opinion.
DURHAM, C.J., and DOLLIVER, GUY and JOHNSON, JJ., concur.
SMITH, J., concurs in result only.
MADSEN, Justice (concurring and dissenting).
I agree with the majority that the Legislature's designation of a "section" in a bill is not binding for purposes of determining the Governor's section veto power under art. III, § 12 (amend.62) of the state constitution. I further agree with the majority in its analysis of the Governor's veto power of dollar provisos in appropriations measures. However, the dissent correctly concludes that where nondollar provisos are included in appropriations measures, they are not subject to the Governor's power to veto an appropriation item or items.
I believe the majority weights the constitutional analysis too heavily in favor of the Governor by permitting exercise of the appropriation item veto power over nonappropriation items. Its result allows, in effect, an unconstitutional line-item veto over nonappropriation provisions which the Legislature has included in appropriations bills. The dissent weights the constitutional analysis too heavily in favor of the Legislature by permitting it to denominate a provision in legislation as anything but a section in order to avoid the constitutional veto power. Neither the Legislature nor the Governor should be able to circumvent the constitution by manipulating what constitutes a section or what is subject to the appropriation item veto.
The majority quite properly retreats from the rule of Washington State Motorcycle Dealers Ass'n v. State, 111 Wash.2d 667, 763 P.2d 442 (1988) which states that whatever the Legislature says is a section is a section. I believe that deference is due the Legislature's designation, but it cannot be binding on this court. Any other conclusion represents an abdication of this court's constitutional duty to resolve constitutional disputes between the Legislature and the Governor. *898 However, the dissent soundly claims the majority overrules Motorcycle Dealers, despite the majority's failure to do so expressly. If this court is to no longer follow the bright-line rule of Motorcycle Dealers, then that case has been overruled and the majority should so state.
I believe the effect of the majority is that we return to the analysis in Fain v. Chapman, 94 Wash.2d 684, 689, 619 P.2d 353 (1980), overruled by Washington State Motorcycle Dealers Ass'n v. State, 111 Wash.2d 667, 763 P.2d 442 (1988), where the court held that whether a piece of legislation is a "section" under art. III, § 12 (amend.62) is a question of law to be decided by the courts, with the Legislature's designation of what constitutes a section entitled to considerable weight. In my view, this is the analysis followed by the majority in this case.
I disagree with the majority when it concludes that a nondollar proviso included in an appropriations bill is subject to the appropriation item veto. The dissent correctly perceives that an appropriation item involves a discernible sum of money, as the majority of cases deciding this issue under similar constitutional provisions have held. (See dissent at 903 (citing cases)).
The majority's concern is that the salutary effect of the appropriation item veto, fiscal responsibility, would be lost if nondollar provisos in an appropriations bill are not subject to the veto power. Majority at 895. The majority reasons that if the nondollar proviso is not subject to the veto power, then the Governor will have only two options, either to veto the entire agency appropriation or program appropriation the proviso conditions or to allow the proviso to remain. Id. However, as the majority also notes, if the Legislature includes a nondollar proviso in an appropriations bill, it is subject to challenge under art. II, § 19 of the state constitution. Majority at 895 n. 11 (citing cases holding that the Legislature may not include substantive measures in an appropriations bill); see also State ex rel. Washington Toll Bridge Auth. v. Yelle, 54 Wash.2d 545, 550-51, 342 P.2d 588 (1959) (condemning inclusion of substantive provisions in appropriations bills as "`a way around the constitutional provision [art. II, § 19]'" and saying "[w]e are not interested in a way around"; noting that an appropriation measure is not a law in the ordinary sense, but "a means only to the enforcement of law, the maintenance of good order, and the life of the state government") (quoting State ex rel. Blakeslee v. Clausen, 85 Wash. 260, 272, 148 P. 28 (1915)).
Thus, substantive provisos conditioning appropriations in an appropriations bill may be challenged as unconstitutional under art. II, § 19. Such provisos, the majority says, "often" are of a substantive nature. Majority at 895 n. 11.
In any event, I do not believe this court should characterize as "appropriation items" provisos which do not involve dollar appropriations regardless of how much the members of this court think they should be subject to the veto power, because to do so is to overstep our constitutional authority and substitute our own judgment for what is plainly expressed in art. III, § 12 (amend.62) of the state constitution.
For the reasons stated above, I concur in part in the majority, and concur in part in the dissent.
ALEXANDER, J., concurs.
SANDERS, Justice (dissenting).
No amount of judicial circumlocution should be allowed to undo what the people have done through exercise of their ultimate and most fundamental organic power to amend the constitution. In the form of the 62nd amendment the voters repealed the Governor's line item veto and substituted a much more limited power in its place: the power to veto a whole bill, an entire "section" or an "appropriation item." But the majority would have us believe it thinks better than the people who amended the constitution, and assures us it is much fairer than the Legislature in the discharge of the uniquely legislative prerogative to draft bills by designated section.
I am sorely tempted to rest my case by simply inviting the readers' comparison of the original text with the amendment which supplanted it to test the majority's claim that *899 the 62nd amendment did not, after all, repeal the Governor's line item veto. Majority at 892.
Original text (prior to amendment):
If any bill presented to the governor contain several sections or items, he may object to one or more sections or items while approving other portions of the bill....
Wash. Const. art. III, § 12 (emphasis added).
Sixty-second amendment:
If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items while approving other portions of the bill: Provided, That he may not object to less than an entire section, except that if the section contain one or more appropriation items he may object to any such appropriation item or items.

Wash. Const. art. III, § 12 (amend.62) (emphasis added).
I submit the "sections" referenced in the 62nd amendment are those "sections" exactly as enacted by the Legislature (not by a majority of this court). This is true because the constitutional text expressly references sections in "any bill presented to the governor" and it is the Legislature which presents bills to the Governor, not this court. At that point the Governor may constitutionally veto the entire section if he likes; however, unlike his prerogative prior to the adoption of the 62nd amendment, he may not go within the section and strike out that which displeases him, thereby potentially subverting the legislative intent through whatever corrupted text which may remain.
To this general rule there is but a single constitutional exception which pertains to "appropriation items." Such an item, although less than a section, may be constitutionally vetoed by the Governor; however, the item must be of an "appropriation" for the veto to survive the constitutional test. But once again, even in this regard, the majority enlarges the power of the Governor at the expense of the Legislature, and, more importantly, at the expense of the citizens of this state who previously determined the exact line of demarcation through ratification of the 62nd amendment.
First, regarding the scope of the section veto, I would follow our most recent opinion[1] and respect the constitutional prerogative of the Legislature to designate its own bill sections. Second, on the scope of the "appropriation item" veto, I would again follow the constitutional mandate which limits such veto to an appropriation item. Accordingly, I would not allow the Governor to use the "appropriation item" veto to separately veto provisos which appropriate nothing yet are less than a section.
The facts before us require the resolution of but two simple issues arising from the text of the 62nd amendment: (1) what is a "section," and (2) what is an "appropriation item."

A. Section Vetoes
In Washington State Motorcycle Dealers Ass'n v. State, 111 Wash.2d 667, 763 P.2d 442 (1988) (Motorcycle), this court made a deliberate, well-reasoned decision recognizing the definition of "section" exactly as it is used in the text of the constitutional amendment. But today the majority overrules that definition contrary to the constitutional text, and, moreover, provides an unworkable substitute for that text in the process.[2]
The constitution allows the Governor to veto a "section" of legislation, nothing less. Const. art. III, § 12 (amend.62). The constitution references "section" exactly as presented to the Governor by the Legislature on the face of the bill ("If any bill presented to the governor contain several sections...." (emphasis added)). The constitution recognizes the Legislature has the exclusive constitutional authority to write and pass its bills in any form it chooses. Const. art. II, § 1 (amend.72). And this court unambiguously agreed in Motorcycle that the Legislature *900 has the constitutional prerogative to designate "sections" in its legislation, 111 Wash.2d at 678, 763 P.2d 442, and that the constitutional text relating to section vetoes referenced sections in bills as passed by the Legislature. The majority acknowledges the holding in Motorcycle. Majority at 890. (Motorcycle "held whatever the Legislature deems to be a section will be held to be a section" for section veto purposes.) But here the Governor attempted to veto language that was less than a legislatively designated "section." The clear text of the constitution simply does not allow this court to substitute its will in that regard for the Legislature's. Compare CLEAN v. State, 130 Wash.2d 782, 814-15, 928 P.2d 1054, 1070 (1996) (Talmadge, J., concurring) ("[W]e give considerable deference to the Legislature's designation of sections subject to the veto power...." (citing Motorcycle)).
Stare decisis requires "[o]nce this court has decided an issue of state law, that interpretation is binding until we overrule it." Hamilton v. Department of Labor & Indus., 111 Wash.2d 569, 571, 761 P.2d 618 (1988).[3]
Were the majority to overrule Motorcycle, it would be required to convincingly demonstrate Motorcycle is clearly wrong as the integrity of our system and of this court requires such a showing. See In re Stranger Creek, 77 Wash.2d 649, 652, 653, 466 P.2d 508 (1970) ("the importance of continuity in the law and the necessity of respect for precedent if we are to remain a society of laws and not of men ... requires a clear showing that an established rule is incorrect and harmful before it is abandoned").
But the majority does not because it cannot, i.e., Motorcycle was correctly decided in the first instance. Motorcycle faithfully follows the voters' directive in constitutional amendment 62. As Motorcycle held, when the voters amended the constitution to limit the gubernatorial partial veto in 1974 the intention from that point forward was "section" would mean legislatively designated section. 111 Wash.2d at 679-80, 763 P.2d 442. This holding was based on the court's thorough analysis of the events leading up to the amendment. 111 Wash.2d at 672, 763 P.2d 442. In particular Motorcycle noted in the 1950's and 1960's the Governor began vetoing less than a legislatively designated nonappropriation section with increasing frequency. 111 Wash.2d at 671, 763 P.2d 442. The people of Washington viewed this expanded use as throwing the balance of power between the executive and legislative branches "out of kilter and they reacted directly" by passing the 62nd amendment. 111 Wash.2d at 675, 763 P.2d 442.[4] In Motorcycle this court held the Legislature has the sole prerogative to determine the contents of a section and that this is exactly "what the people meant" to accomplish when they ratified the 62nd amendment. 111 Wash.2d at 679, 763 P.2d 442. Compare CLEAN v. State, 130 Wash.2d 782, 814, 928 P.2d 1054, 1069 (1996) (Talmadge, J., concurring) ("[T]his Court has been exceedingly reluctant, and properly so, to intrude upon the decisionmaking process of a coordinate branch of state government."). Nothing has changed since Motorcycle other than some of the members of this court.
Motorcycle also buttressed its opinion by recognizing the need for a predictable, easy-to-follow rule. It noted that the earlier "separate subject test" (which the majority now resuscitates) forced the court to engage in a subjective case-by-case determination with no standard to predict whether or not any particular partial veto would be upheld or struck down. Motorcycle, 111 Wash.2d at *901 678, 763 P.2d 442. Motorcycle rejected the separate subject test as a source of "continued frustration" which provided no guidelines to judges or legislators, "sending mixed and confusing signals to our governors" and "render[ing] predictability virtually impossible." 111 Wash.2d at 678-81, 763 P.2d 442. We there declared the separate subject test "discredited," "unworkable," and deemed its further use would only perpetuate error. Id.[5] Thus, also in the name of predictability, Motorcycle abandoned the subjective subject test in favor of a clear and certain rule springing from the language of the constitution itself.
But the majority overtly ignores the legislative section designation claiming it subjectively discerns legislative manipulation to circumvent the Governor's veto. Majority at 891. Are not "[s]uch unsupported assertions [] insulting to the men and women of the Legislature attempting in good faith to serve the people"? CLEAN v. State, 130 Wash.2d 782, 817, 928 P.2d 1054, 1071 (1996) (Talmadge, J., concurring). Moreover, not even the Governor claimed he exercised his veto to block an attempt to manipulate but rather to correct perceived legislative mistakes. Governor's Veto Message, Laws of 1994, chs. 143, 249. More fundamentally, if the Legislature "manipulates," is it not its constitutional prerogative to do just that? All legislation is, in a sense, a giant exercise of manipulating the legal rights of the citizen.
The majority states, "We decline to abandon our constitutional responsibility to referee disputes between the branches." Majority at 891. This is welcome news as long as the referee applies the constitutional rulebook without using his own "palpable attempt at dissimulation." Majority at 891. Such is not the court's prerogativealthough it is certainly the Legislature's prerogative to designate bill sections. It is only the Legislature, not the majority of this court, which is constitutionally empowered to draft, in any form it sees fit, the "bill presented to the governor...." Amendment 62. It is a strange reading of CLEAN v. State, 130 Wash.2d 782, 817, 928 P.2d 1054 (1996) which supports any analogy between the Legislature's right to deal with emergencies by appropriate legislation exempt from referendum under Const. art. II, § 1(b) and the absolute prerogative of the Legislature to draft sections in any bill presented to the Governor. Compare Majority at 891.

B. "Appropriation Item" Vetoes
The majority once again resurrects the repealed line item veto by calling it an "appropriation item," when there is no "appropriation" about the item.
I rest my case that an "appropriation item" necessarily includes an "appropriation" upon the plain text of the constitutional provision, the plain meaning of the words, and the overwhelming weight of authority from this jurisdiction and others. As noted our constitution expressly allows the Governor to veto (1) entire bills; (2) whole bill sections; and (3) appropriation items. Const. art. III, § 12 (amend.62). But the majority today impermissibly enlarges the executive's constitutional "appropriation item" veto to allow the Governor to veto nondollar provisos which are less than a section, yet not an "appropriation" of anything. An "appropriation item" is a dollar amount appropriated for a specified purpose. Nondollar provisos are not appropriation items and are not subject to item veto unless they, at the least, contain an appropriation item.
The majority does not define "appropriation item." The closest the majority comes to definition is cryptically noting that appropriation items are "full subsections of the section of an appropriations bill." Majority at 893 n. 8.[6] This definition identifies less than a section yet not necessarily an appropriation *902 itembecause a subsection may not appropriate anything.
The majority holds appropriation items "should extend to nondollar provisos in appropriations bills." Majority at 896. However, this holding is not limited to "appropriation items" as is the constitutional text. Some may be an "item;" however, the item veto power was repealed by constitutional amendment. Now only an "appropriation item" will suffice.
For example, the majority allows the Governor to separately veto a provision stating that the state patrol may only issue vehicles to commissioned officers. Majority at 894. This is not an "appropriation" of anything and, hence, cannot be an "appropriation item."
As the majority explains, the voters' principal purpose in enacting amendment 62 was to eliminate the Governor's expanded veto practice by restoring the veto to pre-1960 status. Majority at 892. But what the majority fails to admit is prior to 1960 the Governor's use of the appropriation veto was strictly limited to dollar amounts appropriated for a specific purpose.[7] The amendment's purpose was simply to restrict the Governor's item veto to dollar amounts.
This purpose is also affirmed by unambiguous statements of the 62nd amendment's sponsors made on the Senate floor just prior to its passage. Senate Journal, 43d Legislature, 3d Ex.Sess. (1974), at 116. (Senator Dore: "When referring to appropriation item in the bill you are talking about a dollar amount." Senator Grant: "That is correct.").[8] The majority cites this colloquy while dismissing it as "`not necessarily indicative of legislative intent.'" Majority at 895 (quoting Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 154-55, 839 P.2d 324 (1992)). However, Senate floor colloquies are generally used to divine intent (see Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 51, 785 P.2d 815 (1990)) and in particular the very colloquy in question was favorably used by this court to understand the scope of the item veto in Washington Fed'n of State Employees v. State, 101 Wash.2d 536, 543-44, 682 P.2d 869 (1984). Astoundingly, early on the majority favorably cites the same colloquy but in support of a different proposition to reach the result it prefers. Majority at 892.
That "appropriation item" means a dollar appropriation and not an isolated nondollar proviso is further supported by the great weight of authority. By most ordinary accounts appropriation item means a dollar amount for a stated purpose. See Blacks Law Dictionary 832 (6th ed. 1990) ("An `item' in an appropriation is an indivisible sum of money dedicated to a stated purpose.").
By comparison the majority holds: "Nondollar provisos must be `appropriation items' under the constitution, as the rationale for application of the line item veto to dollar provisos applies with equal force to nondollar provisos." Majority at 895. But amendment 62 repealed the line item veto! The majority claims the two basic purposes for an appropriation item veto are: (1) to restrain unnecessary expenditures; and (2) to allow the Governor to avoid pork-barrel spending. Majority at 892. Allowing the Governor to veto nondollar clauses as appropriation items advances neither. But defining appropriation item as a dollar amount fits perfectly with both purposes. Moreover, limiting the item veto to dollar amounts (and, at the most, provisos which go with them) assures each appropriation item veto will reduce unnecessary spending. The "appropriation item" *903 veto must affect spending, otherwise it is simply a resurrection of the repealed item veto.
Further, any term allocating constitutional power implicates the strict and constitutionally mandatory separation of powers which check and balance the power of the opposing branch. But today's majority upsets the mandatory constitutional balance by significantly increasing the Governor's veto power at the expense of the Legislature's power to enact legislation as it sees fit. As one court correctly stated, "when the Governor takes part in appropriation procedures [by using the line item veto], he is participating in the legislative process and the language conferring such authority is to be strictly construed." State ex rel. Cason v. Bond, 495 S.W.2d 385, 392 (Mo.1973). Yet this majority allows the Governor to remove all legislatively imposed restrictions on appropriations without affecting the appropriation, thereby retaining the entire appropriation for his purposes, not the Legislature's. Even the majority acknowledges that such Legislative directives may be "legitimate expression[s] of the Legislature's oversight function over agencies and programs." Majority at 894. But the majority defeats this legitimate legislative function.
The majority asserts appropriate inclusion of nondollar subsections in appropriation items under the pretense that this is consistent with the practice of other states. Majority at 896. This is misleading. The few states and cases the majority references are not necessarily on point. For example, the discussion of the New Mexico case omits the distinguishing fact that the New Mexico constitution allows the governor to veto "part or parts, item or items, of any bill appropriating money...." N.M. Const. art. IV, § 22. As the New Mexico high court explained, by adopting broader language referring to part or parts, the constitutional convention "specifically rejected a proposal which limited the partial veto to items of appropriations." State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, 364, 524 P.2d 975, 980 (1974). Further, the majority declines to acknowledge that nearly every court which has addressed this issue, including the United States Supreme Court, has defined "appropriation item" as a dollar amount. See Bengzon v. Secretary of Justice, 299 U.S. 410, 414-15, 57 S.Ct. 252, 254, 81 L.Ed. 312 (1937) ("An item of an appropriation bill obviously means an item which in itself is a specific appropriation of money, not some general provision of law which happens to be put into an appropriation bill.").[9]
The majority's true grievance appears to be the Legislature's use of nondollar instructions in appropriation bills. The majority claims this practice may violate the single subject rule's prohibition against substantive legislation in appropriation bills. Majority at 895 n. 11 (citing Const. art. II, § 19). However, if the Legislature violates Const. art. II, § 19's prohibition against multi-subject legislation, the clause at issue is Const. art. II, § 19, not the veto clause.
In sum, amendment 62 limits the Governor's section veto to sections designated by the Legislature, not "sections" as a majority of this court would choose to legislate them. Similarly amendment 62 limits appropriation item vetoes to items of "appropriation." Simple text, ample precedent, and common sense require this result. I dissent.
NOTES
[1] Laws of 1994, ch. 143, § 513(28); Laws of 1994, ch. 143, § 513(50); Laws of 1994, ch. 249, § 16(2).
[2] Laws of 1994, ch. 303, § 2(2), § 5(4), § 7(1) (3), § 29(2); Laws of 1994, 1st Sp. Sess., ch. 6, § 122(10), § 122(12), § 132(3), § 135(9), § 145(15), § 204(4)(h), § 228(19), § 303(8)(b), § 305(1), § 311(5), § 610(5)(a); Laws of 1994, 1st Sp. Sess., ch. 7, § 919(8).
[3] Legislators commonly refer to language in appropriations bills conditioning the expenditure of funds by an agency as "budget provisos." We use that terminology here.
[4] Laws of 1994, ch. 303, § 2; Laws of 1994, ch. 303, § 5; Laws of 1994, ch. 303, § 6.
[5] The territorial Constitution of 1878 permitted vetoes only of entire bills. CONST. 1878, art. VII, § 7.
[6] With respect to vetoes, we have indicated the desirability of elevating substance above form. In Washington Fed'n of State Employees, AFLCIO, Council 28, AFSCME v. State, 101 Wash.2d 536, 544, 682 P.2d 869 (1984), we upheld a gubernatorial veto of isolated references in sections of a bill "as a ministerial act" deleting obviously obsolete references.
[7] Cf. State ex rel. Wisconsin Senate v. Thompson, 144 Wis.2d 429, 424 N.W.2d 385 (1988) (Governor's item veto extended to sections, subsections, paragraphs, sentences, words, parts of words, letters, digits, and punctuation marks so long as remaining language was workable).
[8] The budget provisos to which the Governor's line item veto extends include full provisos to an appropriations bill, that is, full subsections of the section of an appropriations bill. We do not believe an "appropriations item" may be a sentence, phrase, letter, digit, or anything less than the whole proviso.
[9] The Legislature can even conflate the "solely" and "up to" language. In Laws of 1994, ch. 303, § 29(2), the Legislature provided "up to $5,000,000 solely for the necessary infrastructure to support the development of a horse racing facility approved by the horse racing commission." Governor Lowry vetoed this subsection.
[10] The Legislature is deemed to be familiar with our rules of interpretation for statutory provisos in legislating. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995) (Legislature is presumed to be aware of judicial construction of statutes).
[11] When the Legislature places a proviso in an appropriations section not containing a specific dollar amount, it may do so at the peril of having the proviso invalidated. Such a proviso often has all the characteristics of substantive legislation. We have repeatedly indicated the Legislature may not abolish or adopt substantive law in an appropriations bill. WASH. CONST., art. II, § 19; Inlandboatmen's Union of the Pacific v. Department of Transp., 119 Wash.2d 697, 836 P.2d 823 (1992); Flanders v. Morris, 88 Wash.2d 183, 558 P.2d 769 (1977); State ex rel. Washington Toll Bridge Auth. v. Yelle, 61 Wash.2d 28, 377 P.2d 466 (1962); State ex rel. Washington Toll Bridge Auth. v. Yelle, 54 Wash.2d 545, 342 P.2d 588 (1959).
[12] "[I]f through the appropriation process, the Legislature were able to compel the Governor either to accept general legislation or to risk forfeiture of appropriations for a department of government, the careful balance of powers ... would be destroyed, and the fundamental principle of separation of powers ... would be substantially undermined." Opinion of the Justices, 384 Mass. 828, 832, 428 N.E.2d 117, 120 (1981).
[13] As the Florida Supreme Court aptly put it:

Our state constitution demands that each bill dealing with substantive matters be scrutinized separately through a comprehensive process which will ensure that all considerations prompting legislative action are fully aired. Provisions on substantive topics should not be ensconced in an appropriations bill in order to logroll or to circumvent the legislative process normally applicable to such action.
Brown v. Firestone, 382 So.2d 654, 664 (Fla. 1980).
[14] The Congressional practice of attaching so-called limitation riders on federal appropriations bills to establish Congressional policy direction has come under greater scrutiny and criticism as an inappropriate vehicle for substantive policy-making. Neal E. Devins, Regulation of Government Agencies Through Limitation Riders, 1987 DUKE L.J. 456 (1987); Jacques B. LeBoeuf, Limitations on the Use of Appropriations Riders by Congress to Effectuate Substantive Policy Changes, 19 HASTINGS CONST. L.Q. 457 (1992).
[15] Other jurisdictions that have considered this question in the context of a governor's line item veto authority to eliminate specific appropriation items without reducing by a like amount the total appropriation in which the item appeared include Reardon v. Riley, 10 Cal.2d 531, 76 P.2d 101 (1938); Green v. Rawls, 122 So.2d 10 (Fla. 1960); Opinion of the Justices, 384 Mass. 828, 428 N.E.2d 117, 120 (1981); Karcher v. Kean, 97 N.J. 483, 479 A.2d 403 (1984); State ex. rel. Brotherton v. Blankenship, 158 W.Va. 390, 214 S.E.2d 467 (1975).
[16] We stated in Washington Fed'n of State Employees, AFL-CIO, Council 28, AFSCME, 101 Wash.2d at 547, 682 P.2d 869:

The Governor is free to veto "one or more sections or appropriation items", without judicial review. The "check", as it has always been, will be the Legislature's two-thirds override. While it may be argued it is difficult for the Legislature to obtain the two-thirds concurrence to call itself into a special veto session or override a veto, these constitutional arrangements are for the people to determine, not this court. If these arrangements become unsatisfactory or subjected to abuse, the people are capable of making desired changes. See CONST. art. 3[sic], § 12 (amend.62).
See also Masciocchi, 64 WASH.L.REV. at 909-10.
[1] Washington State Motorcycle Dealers Ass'n v. State, 111 Wash.2d 667, 763 P.2d 442 (1988).
[2] When reading the constitution, words should be given their plain and ordinary meaning. Westerman v. Cary, 125 Wash.2d 277, 288, 892 P.2d 1067 (1994).
[3] See also Planned Parenthood v. Casey, 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) ("we recognize that no judicial system could do society's work if it eyed each issue afresh in every case that raised it.").
[4] On the issue of balance between the executive and legislative powers, it is valuable to recall that Washington Fed'n of State Employees v. State, 101 Wash.2d 536, 546, 547, 682 P.2d 869 (1984) eliminated the affirmative-negative test and tipped the balance in the Governor's favor as the Governor gained the ability to veto "without judicial review." Motorcycle restored the balance by recognizing the Legislature's constitutional power to define section. Today's majority destroys this check and balance against greater power in the executive by granting the Governor power not granted by the constitution itself to veto less than a section, as well as expanding the Governor's item veto to include nondollar provisos separate from "appropriation items."
[5] It is relevant to note that the trend of searching for a clear rule, which could guide the legislative and executive branches, began in 1984 when we abandoned another subjective test relating to the veto power and instead chose a bright line rule. Washington Fed'n, 101 Wash.2d at 546, 682 P.2d 869 (abandoning the affirmative-negative test). Motorcycle continued the trend by placing a high value on predictable, easy-to-follow rules.
[6] I note the majority's inconsistency in defining the term according to legislative subsection labels while it fervently rejects legislative labels in defining "section" above.
[7] Between 1933 and 1960 Washington Governors vetoed 196 full items of monetary appropriation along with adjacent language describing or limiting the manner in which the amount could be spent. Timothy P. Burke, The Partial Veto Power: Legislation by the Governor, 49 Wash. L.Rev 603, 616 (1974). During the same period, only once did the governor veto the language directing how an appropriation should be spent without vetoing the appropriation itself. Id. at 616.
[8] The uncited portion of the colloquy contains the following: Senator Lewis: The Governor "could not veto out in an appropriation bill the statement of intent or objective of the legislature without vetoing also the dollar amount." Senate Journal, 43d Legislature, 3d Ex.Sess. (1974), at 89.
[9] Also see Thompson v. Graham, 481 So.2d 1212, 1215 (Fla.1985) (citing Bengzon rule); Caldwell v. Meskill, 164 Conn. 299, 320 A.2d 788 (1973) (citing Bengzon rule); Commonwealth v. Dodson, 176 Va. 281, 11 S.E.2d 120, 127 (1940) ("An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose."); Green v. Rawls, 122 So.2d 10, 16 (Fla.1960) (an item of appropriation is a "specified sum of money ... for a specified purpose"); Cenarrusa v. Andrus, 99 Idaho 404, 582 P.2d 1082, 1090 (1978) (item means "item[] of appropriation of money"); Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405, 409 (1911) ("An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose."); State ex rel. Cason v. Bond, 495 S.W.2d 385, 392 (Mo.1973) (item "refers to a separable sum of money appropriated. It does not refer to words, phrases or sentences which express purposes or conditions with reference to the appropriation made.").