STEPHENS, J. (dissenting)
 

 ¶ 86 The central question in this case is whether the legislature enacted Initiative 940 (I-940), Laws of 2018, chapter 11, without change or amendment during the 2018 session. Unless it did, article II, section 1(a) of the Washington State Constitution requires the secretary of state to submit the initiative measure to the people for a vote in the November general election, along with any different legislative measure dealing with the same subject. To answer this question, we are not concerned with how the legislature structured or sequenced the bills it passed. We care what it in fact did.
 

 ¶ 87 What the legislature did in the 2018 session was to reject I-940 as proposed and instead enact an amended version. Though it did so in two steps, when all was said and done, I-940 did not pass, but a new measure emerged-"I-940B," as the plaintiffs style it. This measure, enacted in Laws of 2018, chapter 10 (Engrossed Substitute House Bill 3003 (ESHB 3003), 65th Leg., Reg. Sess. (Wash. 2018) ) and chapter 11 (I-940) differs from the initiative measure proposed to the legislature and is properly regarded as a "different one dealing with the same subject" under article II, section 1(a). The constitutionally compelled result is clear: both I-940 and I-940B must be placed on the November 2018 ballot for a vote of the people. We should grant the writ of mandamus
 

 BACKGROUND
 

 ¶ 88 A group known as De-Escalate Washington proposed I-940, an initiative measure concerning police use of deadly force. They gathered sufficient signatures to require the secretary of state to certify the measure to the legislature for consideration during the 2018 legislative session. Discussions ensued, and a compromise bill amending and supplementing I-940 was introduced as ESHB 3003. This
 bill was expressly contingent on I-940 passing and becoming effective following the constitutional referendum period.
 
 [1]
 
 ¶ 89 Near the end of the session, the legislature passed both ESHB 3003 and I-940.
 
 See
 
 LAWS OF 2018, chs. 10, 11. First, on March 7, 2018, the house passed ESHB 3003; then, on March 8, 2018, the senate passed ESHB 3003 and the governor signed it into law. Shortly thereafter, both the house and senate passed I-940. The governor did not sign I-940 because the constitution does not make initiative measures subject to gubernatorial action. WASH. CONST. art. II, § 1(d).
 

 ¶ 90 Because I-940 remains subject to popular referendum for 90 days under article II, section 1(b), its effective date is June 7, 2018, subject to the outcome of this action. As noted, by its express terms, ESHB specifies an effective date one day later, conditioned on I-940 becoming effective.
 

 ¶ 91 Plaintiff Tim Eyman and Plaintiff-Intervenor state Senator Mike Padden sought declaratory relief and a writ of mandamus in Thurston County Superior Court, to direct the secretary of state to place both I-940 and what is described above as I-940B on the November 2018 general election ballot.
 
 [2]
 
 They brought a motion for summary judgment, and the superior court granted relief in part. The court agreed with Eyman and Padden that the legislature did not pass I-940 "without change or amendment" during the 2018 session, so article II, section 1(a) requires I-940 be
 submitted to the people for a vote in the November 2018 general election. Verbatim Report of Proceedings (April 20, 2018) (VRP) at 62. However, the superior court disagreed that the passage of ESHB 3003 resulted in a different measure on the same subject that must also be placed on the ballot.
 

 Id.
 

 The court observed, "Potentially, it could be, I think, interpreted that way.... However, I am compelled by the fact that, in fact, that was offered as an amendment to the legislation when it was before the legislature, and the legislature said, no, specifically, this is not an alternative to I-940."
 

 Id.
 

 The superior court issued a writ directing the secretary of state to place I-940 as proposed to the legislature on the November ballot. Clerk's Papers (CP) at 257.
 

 ¶ 92 The legislature and I-940 proponent De-Escalate Washington appealed the superior court's ruling directly to this court. Eyman and Padden cross appealed. We granted a motion to intervene by Lieutenant Governor Cyrus Habib. The secretary of state did not join the appeal but indicated the need for a timely resolution in order to prepare ballots for the November 2018 general election. We accelerated the schedule for review and heard oral argument on June 28, 2018.
 

 ANALYSIS
 

 ¶ 93 We must decide the effect of article II, section 1(a) of the Washington State Constitution on the facts of this case. We review summary judgment motions and constitutional questions de novo.
 
 Madison v. State
 
 ,
 
 161 Wash.2d 85
 
 , 92,
 
 163 P.3d 757
 
 (2007) (plurality opinion).
 

 ¶ 94 The relevant constitutional language states that initiative measures certified to the legislature
 

 shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measures shall be enacted by the legislature it shall be subject
 to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. The legislature may reject any measure so proposed by initiative petition and propose a different one dealing with the same subject, and in such event both measures shall be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election.
 

 WASH. CONST. art. II, § 1(a).
 

 ¶ 95 This constitutional provision frames the two questions before us:
 

 (1) Whether the legislature enacted I-940 without change or amendment in the 2018 session.
 

 (2) Whether I-940B is a different legislative measure dealing with the same subject as I-940.
 
 [3]
 

 I. The Legislature Did Not Enact I-940 without Change or Amendment during the 2018 Legislative Session, so the Initiative Measure Must Be Placed on the November 2018 General Election Ballot
 

 ¶ 96 To adopt a proposed initiative, article II, section 1(a) requires the legislature to enact it "without change or amendment by the legislature before the end of such regular session." This is the only instance in which the initiative becomes law without further action. As an opinion of the attorney general in 1971 recognized, a natural reading of the constitutional language indicates that any alteration of an initiative is effectively a legislative rejection of the measure.
 
 See
 
 1971 Op. Att'y Gen. No. 5, at 3 ("In
 light of that language ['without change or amendment by the legislature'] any alteration in the text of an initiative to the legislature would therefore of necessity constitute a rejection of the initiative and a proposal of an alternative measure on the same subject."). Here, of course, the legislature did not alter the text of I-940 in the bill setting forth the initiative measure. Instead, it introduced a separate bill, ESHB 3003, which expressly amended the measure. The legislature and De-Escalate Washington believe this different approach makes all the difference. I do not.
 

 ¶ 97 Article II, section 1(a) is not concerned with how the legislature styles or sequences the bills it considers. We should not imagine that the drafters of our 7th Amendment failed to anticipate creative approaches to legislating or meant to restrict the "without change or amendment" clause to a single vote on a single bill. There is no language in the constitutional text that requires an isolated bill-by-bill analysis. As in all matters of constitutional interpretation, we should be guided by plain language and common sense. The inescapable reality is that the 2018 legislature did not in fact adopt I-940 "without change or amendment" but, rather, adopted the initiative in one bill and adopted amendments to the measure in another. This was tantamount to rejection of the measure as proposed, necessitating a vote of the people in the next general election.
 

 ¶ 98 This result is clear-unless we accept the argument that article II, section 1(a) allows for amendments to an initiative during the same session in which an initiative is enacted. The legislature and De-Escalate Washington make that argument, but I agree with the lead opinion that it is wrong.
 
 See
 
 Opening Br. of Wash. State Legislature at 14-15; De-Escalate Wash.'s Opening Br. at 13-14. Following established grammatical rules, the clause "before the end of such regular session" embraces the clause "without change or amendment by the legislature," meaning that the legislature cannot in the same session adopt but amend an initiative measure and thereby avoid giving the people
 their say at the ballot box.
 
 See
 
 lead opinion at 1192-93. A contrary reading of article II, section 1(a) would allow the legislature to circumvent the constitutional promise of ballot access by "passing" while immediately altering an initiative measure in a single session. This is not faithful to constitutional design. In short, to enact "without change or amendment by the legislature before the end of such regular session" means just that.
 
 [4]
 
 ¶ 99 I disagree with the lead opinion, however, as to the result of the legislature having amended I-940 during the 2018 regular session. The lead opinion concludes that the amending bill, ESHB 3003, "violates" article II, section 1(a) and is therefore invalid. Lead opinion at 1192-93. It thus strikes the amendments to 1-940 and treats the initiative measure as having been enacted without change or amendment. This is a fiction at odds with what the legislature actually did, and it achieves a result that leaves the people without their say. I would not question whether I-940 or ESHB 3003 were validly enacted. Instead, accepting at face value the sum total of the legislature's actions on I-940 and ESHB 3003, I would recognize the effect of article II, section 1(a) on those actions. As the attorney general's opinion in 1971 observed, when an initiative measure is enacted with any alteration, this constitutes a rejection of the proposed initiative and the proposal of an alternative. 1971 Op. Att'y Gen. No. 5, at 3. "Under the provisions of Article II, § 1(a)... both measures would then have to be submitted to the voters."
 

 Id.
 

 (citing
 
 Farris ex rel. Dorsky v. Goss
 
 ,
 
 143 Me. 227
 
 ,
 
 60 A.2d 908
 
 (1948) ). That is what should happen here.
 II. By Enacting Both ESHB 3003 and I-940 in the 2018 Legislative Session, the Legislature Created a Different Measure on the Same Subject as I-940, Which Must Also Be Placed on the November 2018 General Election Ballot
 

 ¶ 100 The superior court issued a writ of mandamus directing the secretary of state to place I-940 on the November 2018 general election ballot. However, the court declined to also require that the version of I-940 amended by ESHB 3003 (so-called I-940B) be placed on the ballot as an alternative measure. The court found it significant that ESHB 3003 was not a stand-alone bill and that the legislature did not intend it as an alternative to I-940.
 
 See
 
 VRP at 62 ("I am compelled by the fact that, in fact, that was offered as an amendment to the legislation when it was before the legislature, and the legislature said, no, specifically, this is not an alternative to I-940."). I would modify this aspect of the writ of mandamus and direct the secretary of state to place both I-940 and I-940B on the November 2018 general election ballot.
 

 ¶ 101 Article II, section 1(a) is not concerned with whether the legislature regarded ESHB 3003 as creating an alternative to I-940. The term "alternative measure" does not appear in the text. The constitutional provision operates not upon what the legislature intended but on what it in fact did. While the legislature, in its brief, cites past instances in which it has expressly proposed an alternative measure to an initiative, article II, section 1(a) does not require such express direction.
 
 [5]
 
 It has long been clear that any legislative measure enacted on the same subject as an initiative certified to the
 legislature will be regarded as an alternative measure, even if the overlap is inadvertent.
 
 See
 

 Dep't of Revenue v. Hoppe
 
 ,
 
 82 Wash.2d 549
 
 , 558,
 
 512 P.2d 1094
 
 (1973) (concluding statute conflicted with proposed initiative measure despite any legislative intent "to subvert the initiative power of the people");
 
 see also
 
 1971 Op. Att'y Gen. No. 5, at 2-3, 4 (noting that any change, whether to the text of an initiative or by separate statute constitutes rejection of the initiative and proposal of an alternative).
 

 ¶ 102 In addressing the effect of the legislative enactment of a bill on the same subject as a certified initiative measure, the 1971 attorney general opinion cited a case from Maine involving a constitutional provision similar to article II, section 1(a).
 

 Farris ex rel. Dorsky
 
 ,
 
 60 A.2d 908
 
 . The Maine court held that an initiative and a separate bill enacted during the same legislative session were alternative or substitute measures, regardless of the legislature's intent.
 
 See
 

 id.
 

 at 911
 
 ("[W]e are not concerned, as we have tried to point out above, with how the legislature may have regarded [the substitute bill]. We must decide only what it is in fact.").
 

 ¶ 103 Here, all parties agree that ESHB 3003 and I-940 deal with the same subject. The legislature admitted as much in its answer to the plaintiff's complaint.
 
 See
 
 CP at 69 (Legislature Answer to First Am. Compl., para. 118). It is also undisputed that ESHB 3003 expressly amends I-940, albeit prospectively. The main argument against concluding that the resulting measure, I-940B, is an alternative to I-940 seems to be that ESHB 3003 is not self-contained, so it would be necessary for this court or the secretary of state to "draft a new piece of legislation altogether." Reply Br. of Cyrus Habib at 11;
 
 see also
 
 Opening Br. of Wash. State Legislature at 31 (arguing court would need "to essentially draft new legislation by stitching together ESHB 3003 and 1-940"). I find this argument unconvincing.
 

 ¶ 104 First, there is nothing novel in having amendments to an initiative be proposed in a separate bill. Over 40 years
 ago, the attorney general addressed a question about this very possibility, asking, "Can the legislature pass a statute relating to a particular section, or sections, in the initiative so as to make corrections to an initiative that has been submitted to the legislature?" 1971 Op. Att'y Gen. No. 5, at 4. He properly regarded this two-step approach as being no different from legislative action directly amending a proposed initiative: "We would answer this question in essentially the same manner as question (1).... Any such 'corrective' legislation would constitute an alternative proposal which would have to be submitted to the voters along with the original initiative itself."
 

 Id.
 

 ¶ 105 Nor should we worry that additional drafting is necessary to create the alternative measure the secretary of state must place on the ballot alongside I-940. The 2018 legislature's actions are complete. Had there been no challenge, the code reviser's office would have performed its usual function of incorporating the provisions of I-940 and ESHB 3003 into the Revised Code of Washington. No more is involved in preparing so-called I-940B for the November 2018 general election ballot. Notably, the secretary of state has not protested or sought further guidance from this court. I-940B is properly understood as a different legislative measure on the same subject as I-940. By the clear direction of article II, section 1(a), it must be placed on the November 2018 general election ballot for a vote of the people.
 

 III. The Enrolled Bill Doctrine Is Not Implicated by a Judicial Decision Declaring the Constitutional Effect of Legislative Action and Directing the Secretary of State To Act Consistent with the Constitution
 

 ¶ 106 The legislature, De-Escalate Washington, and intervenor, Lieutenant Governor Cyrus Habib, argue that granting a writ of mandamus in this case would run afoul of the enrolled bill doctrine. They criticize the superior court for violating this doctrine by looking behind the face of the
 bills passed to question legislative procedures or intent.
 
 See
 
 Opening Br. of Wash. State Legislature at 24-26; De-Escalate Wash.'s Opening Br. at 12; Opening Br. of Cyrus Habib at 8-20. While their concerns are valid, judicial action that gives effect to the plain language of article II, section 1(a) does not implicate the enrolled bill doctrine.
 

 ¶ 107 The enrolled bill doctrine prohibits judicial meddling into legislative processes. Thus, we do not inquire into the procedures or actions preceding the enactment of a statute that is " 'properly signed and fair upon its face.' "
 
 Wash. State Grange v. Locke
 
 ,
 
 153 Wash.2d 475
 
 , 499-500,
 
 105 P.3d 9
 
 (2005) (quoting
 
 Schwarz v. State
 
 ,
 
 85 Wash.2d 171
 
 , 175,
 
 531 P.2d 1280
 
 (1975) ). I agree with the legislature and the lieutenant governor that much of the superior court's reasoning implicates this doctrine. For example, questioning whether legislators would have voted for I-940 had ESHB 3003 not already passed seems an impermissible inquiry. At the same time, asking whether the legislature intended to create an alternative proposal to I-940 when it passed ESHB 3003, including by looking at rejected amendments to the bill, also invites judicial peek-a-boo into legislative
 processes. We should not go beyond the four comers of the enacted measures, or question the validity of the legislature's actions.
 

 ¶ 108 Properly applying article II, section 1(a) to the facts of this case does not implicate the enrolled bill rule. Article II, section 1(a) simply requires us to consider the constitutional effect of the measures enacted. We need not consider the sequence or timing of the legislative action, or the intent of the legislators who voted on I-940 and ESHB 3003. To repeat the refrain: we care only what the legislature in fact did. Article II, section 1(a) dictates the constitutional effect of its actions.
 

 ¶ 109 Contrary to the lead opinion's approach, we also need not decide whether any legislative enactment was invalid or unconstitutional. As noted, the plaintiffs make no claims of invalid or unconstitutional action. This case is
 thus unlike those in which legislative action is challenged as exceeding constitutional limits.
 
 See, e.g.
 
 ,
 
 Lee v. State,
 

 185 Wash.2d 608
 
 , 629,
 
 374 P.3d 157
 
 (2016) (invalidating initiative that sought to force constitutional amendment). We should accept that the legislature validly passed both I-940 and ESHB 3003 and recognize the clear constitutional result of that action under article II, section 1(a). Because the legislature in fact rejected I-940 as proposed and enacted a different measure on the same subject, both I-940 and I-940B "
 
 shall
 
 be submitted by the secretary of state to the people for approval or rejection at the next ensuing regular general election." WASH. CONST. art. II, § 1(a) (emphasis added). A writ of mandamus is appropriate to compel this action.
 
 See
 

 Gerberding v. Munro
 
 ,
 
 134 Wash.2d 188
 
 , 195,
 
 949 P.2d 1366
 
 (1998) ("Mandamus will lie to compel a state officer to undertake a clear duty.").
 

 IV. Article II, Section 1(a) Does Not Require a Finding that the Legislature Made a "Palpable Attempt at Dissimulation" in Order to Decide the Constitutional Effect of Legislative Action
 

 ¶ 110 The above analysis does not follow the legislature's proposed test extrapolated from
 
 Washington State Legislature v. Lowry
 
 ,
 
 131 Wash.2d 309
 
 ,
 
 931 P.2d 885
 
 (1997). That test, which would have us query whether legislative action enacting and amending a proposed initiative reflects a " 'palpable attempt at dissimulation' " finds no home in article II, section 1(a).
 
 [6]
 

 Id.
 
 at 320,
 
 931 P.2d 885
 
 (quoting
 
 State ex rel. Hamilton v. Martin
 
 ,
 
 173 Wash. 249
 
 , 257,
 
 23 P.2d 1
 
 (1933) ). The constitutional text does not make any distinction between valid and invalid legislative votes on an initiative-an inquiry that itself risks running afoul of the enrolled bill doctrine. Rather, it tells us what happens
 whenever the legislature amends a proposed initiative during the same session in which it enacts the measure. This action constitutes a rejection of the initiative measure, and the amended version constitutes a different measure on the same subject. Both measures must then be placed on the next general election ballot for a vote of the people.
 

 ¶ 111 The test the legislature would have us employ arose in different circumstances and serves different purposes. The
 
 Lowry
 
 decision effectuates the implied constitutional premise that one branch of government may be restrained when a natural consequence of its actions is to circumvent the powers reserved to another branch.
 
 131 Wash.2d at 320-21, 330-32
 
 ,
 
 931 P.2d 885
 
 . In this case, there is no need to inquire into whether the legislature has upset the balance of power between the legislature and the people. Such an inquiry might serve to draw attention to the purpose behind article II, section 1(a) to preserve the people's initiative power, but there is no need to look beyond the plain constitutional language to discern the result that necessarily flows from the legislature's failure to enact a proposed initiative measure without change or amendment. The measure, along with any different legislative measure dealing with the same subject, must be placed on the next general election ballot. Thus, we are not concerned with restraining the legislature's power, but recognizing the result of its actions consistent with article II, section 1 (a).
 

 CONCLUSION
 

 ¶ 112 Article II, section 1(a) provides only one instance in which a certified initiative measure becomes law by vote of the legislature alone: that is, when it is enacted without change or amendment by the legislature in the session in which it is certified. That did not happen here. By enacting both I-940 and ESHB 3003 amending I-940, the 2018 legislature effectively rejected I-940 and proposed a different measure on the same subject. By the clear directive of
 article II, section 1(a) of the Washington State Constitution, both alternatives must be placed on the November 2018 general election ballot. I would grant the plaintiff's motion for a writ of mandamus directing the secretary of state to take such action.
 

 WE CONCUR:
 

 Johnson, J.
 

 Owens, J.
 

 I-940 cannot even be directly incorporated into the Revised Code of Washington because ESHB 3003 expressly amends I-940.
 

 The complaint states, "Plaintiff Eyman requests an Order from this Court directing the Secretary of State to place on the November 2018 regular general election ballot for a vote of the people both 1-940 and the legislature's proposed alternative, namely, the text of I-940 as amended by Engrossed Substitute House Bill 3003." Clerk's Papers at 15 (First Am. Compl., para. 135).
 

 I fundamentally disagree with the lead opinion's framing of the issues as whether I-940 and ESHB 3003 were "validly enacted and constitutional." Lead opinion at 1190. The plaintiffs make no argument that either of these measures is invalid or unconstitutional. They simply seek a judicial declaration as to the constitutional effect of the legislature's actions under article II, section 1(a), and a writ of mandamus consistent with that effect.
 
 See
 
 CP at 14-15.
 

 In rejecting the legislature's power to at once enact and amend an initiative, I do not rely on the reasoning of the superior court that the "take precedence" language in article II, section 1(a) requires the legislature to vote on a proposed initiative
 
 first
 
 .
 
 See
 
 VRP at 58. Both De-Escalate Washington and the legislature properly read this language as simply requiring the legislature to promptly introduce and consider an initiative measure once it is certified, not to dictate the sequence of legislative action. De-Escalate Wash.'s Opening Br. at 14-16; Opening Br. of Wash. State Legislature at 27-28. The legislature points out that the "take precedence" language is effectuated in part by procedural rules that exempt proposed initiatives from the deadlines and cutoff dates generally applicable to proposed legislation.
 
 See
 
 Opening Br. of Wash. State Legislature at 28.
 

 While article II, section 1(a) speaks in terms of a legislative "proposal," this should not be read to distinguish proposals from enactments. Instead, use of the word "proposal" in this context logically reflects the impact of the constitutional provision on the legislature's action. While the legislature may purport to enact a different measure on the same subject as a certified initiative, under article II, section 1(a) such enactment constitutes a mere proposal because the measure must be submitted to a vote of the people.
 

 As the plaintiffs point out, this test is also unworkable from a practical standpoint, as the secretary of state needs clear guidance to make a time-sensitive decision between the end of the legislation and the date for printing ballots. Br. of Resp'ts & Cross-Appellants at 34-35.